ORAL ARGUMENT NOT YET SCHEDULED

No. 21-1042 (consolidated with 21-1109)

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

VILLAGE OF MORRISVILLE, VERMONT,
*Petitioner*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*,

VERMONT AGENCY OF NATURAL RESOURCES,
*Intervenor for Respondent*.

On Appeal from Orders of the Federal Energy Regulatory Commission,
173 FERC ¶ 61,156 et al.

---

**BRIEF OF AMERICAN WHITEWATER,
VERMONT NATURAL RESOURCES COUNCIL, AND
VERMONT COUNCIL OF TROUT UNLIMITED AS *AMICI CURIAE* IN
SUPPORT OF RESPONDENT AND DENIAL OF PETITIONS**

---

Christophe Courchesne
Environmental Advocacy Clinic
Vermont Law and Graduate School
PO Box 96, 164 Chelsea Street
South Royalton, VT 05068
(802) 831-1630
ccouchesne@vermontlaw.edu

# CERTIFICATE AS TO PARTIES, RULINGS, RELATED CASES, AND SEPARATE BRIEFING

Under D.C. Circuit Rule 28(a)(1), *Amici* American Whitewater, Vermont Natural Resources Council, and Vermont Council of Trout Unlimited submit the following Certificate as to Parties, Rulings, Related Cases, and Separate Briefing.

All parties appearing before this Court and the Federal Energy Regulatory Commission in these matters are listed in the Respondent's Brief.

References to the rulings under review and related cases appear in the Respondent's brief.

Pursuant to D.C. Circuit Rule 29(d), *Amici* state they were not aware of any other planned amicus brief during the drafting of this brief and that, in any event, separate briefing is warranted because, as nonprofit environmental organizations, *Amici*'s interests in and views on the environmental importance of the orders on appeal and the legal principles at stake are distinct from those of other parties. Independently from the parties here, the organizations and their members actively participated in the hydropower relicensing and state water quality certification process for the project at issue.

Respectfully submitted,

*/s/ Christophe Courchesne*
Christophe Courchesne
*Counsel for Amici*

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, RELATED CASES, AND SEPARATE BRIEFING ............................................................. ii

TABLE OF AUTHORITIES ............................................................. iv

GLOSSARY ............................................................. vii

IDENTITY AND INTERESTS OF AMICI CURIAE ...........................................1

RULE 29 STATEMENTS ...........................................1

INTRODUCTION ...........................................2

BACKGROUND ...........................................4

   I.   Section 401 of the Clean Water Act in the Hydropower Context ...................4

   II.  The Morrisville Developments and the 2016 Certificate ...........................5

   III. Procedural Background ...........................................9

ARGUMENT ...........................................12

   I.   The State Did Not Waive Its Clean Water Act Section 401 Authority.........12

     A.    The Clean Water Act Text and Purpose Protects State Authority. ........14

     B.    In *Hoopa Valley*, Waiver Is Limited to Functional or Contractual Agreement Between an Agency and Applicant—Not Unilateral Withdrawals. ...................16

     C.    The Record Here Shows Morrisville Unilaterally Withdrew and *Hoopa Valley* Does Not Apply. ...................19

     D.    Waiver Would Profoundly Undermine Section 401's Purposes, Including Cooperative Federalism. ...................21

   II.  Finding Waiver Would Jeopardize Vermont's Natural Resources. ..............25

     A.    The Morrisville Developments Are Degrading Vermont's Water Quality. ...................26

     B.    Finding Waiver Would Further Endanger the Ecological Health of Aquatic Habitats in Vermont. ...................27

     C.    Finding Waiver Would Destroy Recreational Opportunities for Vermonters. ...................29

CONCLUSION ...........................................30

CERTIFICATE OF COMPLIANCE ...........................................32

CERTIFICATE OF SERVICE ...........................................32

# TABLE OF AUTHORITIES

**Cases**

*Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963 (D.C. Cir. 2011) ................14

*Cal. State Water Res. Control Bd. v. FERC*, 43 F.4th 920 (9th Cir. 2022). ........5, 19

*In re Morrisville Hydroelectric Project Water Quality*, 224 A.3d 473 (Vt. 2019). .7, 10, 29, 30

*In re Morrisville Hydroelectric Project Water Quality,* Decision on Merits Following Remand, No. 103-9-16 Vtec, 2020 WL 5753099 (Vt. Super. Aug. 26, 2020) ....................................................................................................................7, 29

*N.C. Dep't of Envtl. Quality v. FERC*, 3 F.4th 655 (4th Cir. 2021). .......... 17, 19, 25

*N.Y. State Dep't of Envtl. Conservation v. FERC*, 991 F.3d 439 (2d Cir. 2021). ...16

*New York v. United States*, 505 U.S. 144 (1992) ....................................................21

*PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*, 511 U.S. 700 (1994). . 13, 21

*S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547 U.S. 370 (2006) ......................4, 22

*Turlock Irrigation Dist. v. FERC*, 36 F.4th 1179 (D.C. Cir. 2022). ........... 19, 21, 25

**Statutes**

10 Vt. Stat. Ann. § 1250 (2014) ..............................................................................23

10 Vt. Stat. Ann. § 1250 (2015) ..............................................................................23

110 Vt. Stat. Ann. § 1251(a) (2015) ........................................................................23

16 U.S.C. § 797(e) ......................................................................................................4

16 U.S.C. § 808(e) ......................................................................................................4

33 U.S.C. § 1251(a) ....................................................................................................2

33 U.S.C. § 1251(a)(2) .............................................................................................22

33 U.S.C. § 1251(b) ....................................................................................................3

33 U.S.C. § 1341 ....................3, 4, 10, 11, 12, 13, 14, 16, 18, 19, 20, 21, 22, 23, 25

33 U.S.C. § 1341(a)(1) ...................................................................................... 2, 4, 14

33 U.S.C. § 1341(d) ...............................................................................................4, 21

**Regulations**

18 C.F.R. § 5.23(b)(2) .................................................................................................4

40 C.F.R. § 121.2(a)(3) ............................................................................................23

Vermont Water Quality Standards, § 1-01(A) (2014), https://dec.vermont.gov/sites/dec/files/wsm/mapp/docs/WSMD_WaterQualityStandards_2014.pdf .......23

Vermont Water Quality Standards, § 3-04 (2014), https://dec.vermont.gov/sites/dec/files/wsm/mapp/docs/WSMD_WaterQualityStandards_2014.pdf......... 27, 29

Waiver of the Water Quality Certification Requirements of Section 401(a)(1) of the Clean Water Act, 86 Fed. Reg. 16,298 (June 28, 2021) ......................... 13, 16

**Commission Orders**

Declaratory Order on Waiver of Water Quality Certification, 173 FERC ¶ 61,156 (Nov. 19, 2020).................................................... 6, 9, 10, 11, 14, 15, 16, 19, 20

KEI (Maine) Power Mgmt. (III) LLC, 173 FERC ¶ 61,069 (Oct. 15, 2020) .. 12, 18, 21

Order Addressing Arguments Raised on Rehearing, 174 FERC ¶ 61,141 (Feb. 24, 2021) ................................................................ 5, 11, 16

Order Issuing License, 16 FERC ¶ 62,346 (Aug. 28, 1981)................................5, 6

Pac. Gas and Elec., Declaratory Order on Waiver of Water Quality Certification, 170 FERC ¶ 61,232 (Mar. 19, 2020)...................................................17

Placer Cnty. Water Agency, Declaratory Order on Waiver of Water Quality Certification, 167 FERC ¶ 61,056 (Apr. 18, 2019)...............................17

S. Cal. Edison Co., Declaratory Order on Waiver of Water Quality Certification, 170 FERC ¶ 61,135 (Feb. 20, 2020)..................................................17

**Regulatory Documents**

American Whitewater & Vermont Paddling Club Response to Revised Draft Water Quality Certification 1, 20–22 (Apr. 29, 2016), FERC Accession No. 20160510-5118 ................................................................... 6, 9, 24

Application for Administrative Amendment (Separation of Units of Development) (Feb. 15, 2022), Accession No. 20220215-5108..................................................12

Enforcement Request (Apr. 1, 2022), Accession No. 20220401-5138 ...................12

FERC, Final Environmental Assessment for Morrisville Hydroelectric Project (Dec. 16, 2014), Accession No. 20141216-3042 ............................. 6, 8, 9, 24, 30

Request for FERC to Incorporate State Certificate (Dec. 20, 2023), Accession No. 20231220–5062 .....................................................................12

Response to Additional Information Requests (Mar. 12, 2024), Accession No. 20240312-5072..........................................................................12

Response to Request for Technical Conference on Annual License Conditions (May 24, 2023), Accession No. 20230524-3000 ..................................................12

U.S. Dep't of Interior, Comments, Recommendations, Prescriptions (Dec. 31, 2013), Accession No. 20131231-5199 ...................................................... 8, 28, 29

Vt. Agency of Nat. Res., Water Quality Certification (Aug. 9, 2016), https://dec.vermont.gov/sites/dec /files/wsm/public-notices/401/ Morrisville_401WQC.pdf ..................................... 2, 7, 8, 9, 23, 24, 25, 28, 29, 30

Vt. Dep't of Envtl. Conservation, Morrisville Hydroelectric Project – Water Quality Certification Response to Public Comments 16–17, 32–33 (2016), https://dec.vermont.gov/sites/dec/files/wsm/public-notices/401/Morrisville%20 ResponseSummary_401WQC.pdf ....................................................... 15, 23, 27

**Other Authorities**

116 Cong. Rec. 8984 (1970) ...................................................................................22

91 Cong. Rec. H2691 (daily ed. April 16, 1969)....................................................14

Agency of Nat. Res. Watershed Mgmt. Div., Lamoille: 2016 Tactical Basin Plan (2016), https://dec.vermont.gov/sites/dec/files/wsm/mapp/docs/2016-12-30_Lamoille_Tactical_Plan_FINAL.pdf ...........................................................24

U.S. EPA, Clean Water Act Section 401 Water Quality Certification: A Water Quality Protection Tool for States and Tribes (2010), https://archive.epa.gov/epa/sites/production/files/2016-11/documents/cwa_401_handbook_2010.pdf..........23

Vt. Agency of Nat. Res., Hydropower in Vermont: An Assessment of Environmental Problems & Opportunities, Volume I: Summary of Study & Results viii (1988), https://dec.vermont.gov/sites/dec/files/wsm/rivers/docs/rv_hydropowerinvermontvol1.pdf ....................................................... 26, 27

# GLOSSARY

| | |
|---|---|
| Act | Clean Water Act |
| Agency | Vermont Agency of Natural Resources |
| American Whitewater & Vermont Paddling Club | American Whitewater & Vermont Paddling Club, Re: American Whitewater and Vermont Paddlers Club Response to Revised Draft Water Quality Certification 1, 20–22 (Apr. 29, 2016), Accession No. 20160510-5118 |
| Amici | American Whitewater, Vermont Council of Trout Unlimited, and Vermont Natural Resources Council |
| Basin | Lamoille Basin |
| Certificate | Water Quality Certificate |
| Commission | Respondent Federal Energy Regulatory Commission |
| Declaratory Order | Declaratory Order on Waiver of Water Quality Certification, 173 FERC ¶ 61,156 (Nov. 19, 2020) |
| Department | Vermont Department of Environmental Conservation |
| Developments | Morrisville's hydroelectric developments on the Green and Lamoille Rivers: Green River, Lake Elmore, Morrisville, and Cadys Falls |
| Final Environmental Assessment | Final Environmental Assessment for Morrisville Hydroelectric Project 22–23 (Dec. 16, 2014), Accession No. 20141216-3042 |
| *Hoopa Valley* | *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099 (D.C. Cir. 2019) |
| KEI (Maine) Power | KEI (Maine) Power Mgmt. (III) LLC, 173 FERC ¶ 61,069 (Oct. 15, 2020) |
| Morrisville | Petitioner Village of Morrisville, Vermont |
| Rehearing Order | Order Addressing Arguments Raised on Rehearing, 174 FERC ¶ 61,141 (Feb. 24, 2021) |
| Section 401 | 33 U.S.C. § 1341 |
| Standards | Vermont Water Quality Standards |

| U.S. Dep't of Interior | U.S. Dep't of Interior, Comments, Recommendations, Prescriptions (Dec. 31, 2013), Accession No. 20131231-5199 |
| --- | --- |
| 2016 Certificate | Vt. Agency of Nat. Res., Water Quality Certification (33 U.S.C.§ 1341) (Aug. 9, 2016), https://dec.vermont.gov/sites/dec/files/wsm/public-notices/401/Morrisville_401WQC.pdf |

# IDENTITY AND INTERESTS OF AMICI CURIAE

*Amici* are American Whitewater, Vermont Natural Resources Council, and Vermont Council of Trout Unlimited. American Whitewater is a national conservation nonprofit focused on protecting America's whitewater resources and enhancing their ability to be enjoyed safely. The Vermont Natural Resources Council seeks to protect and enhance the State's natural environments, communities, character, and unique sense of place. Vermont Council of Trout Unlimited's mission is to protect and preserve cold-water fisheries and watersheds throughout the State of Vermont. As such, all three parties are interested as *amici curiae* in the protection and preservation of Vermont's water resources, the variety of water-based uses enjoyed by Vermonters, and state authority to condition projects that may impact these resources.

# RULE 29 STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 29(a)(4), *Amici* state that no party or party's counsel authored this brief in whole or in part. No party, party's counsel, or person other than *Amici* or their counsel contributed money intended to fund preparing or submitting this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(2) and D.C. Circuit Rule 29(b), a motion seeking the Court's leave to file accompanies this brief.

## INTRODUCTION

Section 401 of the Clean Water Act (Act) promotes cooperative federalism, emphasizing the joint responsibility of federal and state agencies to achieve the Act's overarching goal of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of [the] Nation's waters." 33 U.S.C. § 1251(a); *see* 33 U.S.C. § 1341(a)(1). Under Section 401, state and federal agencies collaborate to ensure that federal actions protect water quality, recreational uses, and ecological health in the affected waters. States participate in the review of federal projects by issuing (or denying) a water quality certificate (Certificate), which becomes part of the federal license or approval. The conditions of the Certificate ensure the project does not contribute to violations of state water quality standards. If a state "fails or refuses to act" on a Certificate request within one year, the state impliedly waives its powers to issue or deny a Certificate. 33 U.S.C. § 1341(a)(1).

In this case, the Vermont Agency of Natural Resources (Agency) issued a Certificate in 2016 for the Federal Energy Regulatory Commission's (Commission) relicensing of several hydroelectric power developments (Developments) in the Lamoille Basin (Basin) owned and operated by the Village of Morrisville, Vermont (Morrisville). Vt. Agency of Nat. Res., Water Quality Certification (Aug. 9, 2016), https://dec.vermont.gov/sites/dec /files/wsm/public-notices/401/Morrisville_401WQC.pdf (2016 Certificate). However, the

2

Commission has not, to date, acted on Morrisville's relicensing application, leaving the 2016 Certificate dormant. During this delay, environmental quality and recreational opportunities in the Basin have suffered, contrary to the Act's purpose. 33 U.S.C. § 1251(a).

Claiming the Agency waived its Section 401 powers by failing to timely act on the certification request, Morrisville now asks this Court to void the Commission's well-considered decision concluding otherwise, and with it, the 2016 Certificate's conditions, which will violate the Vermont Water Quality Standards (Standards). In doing so, Morrisville seeks to bypass the Agency's rigorous and fair determinations, affirmed by state judicial review, on the measures needed to protect water quality at the Developments. Morrisville's legal arguments to this Court rewrite history and misinterpret Section 401, its purpose, and governing case law. A ruling in Morrisville's favor would undermine state authority to protect environmental health and public welfare, violating the Act's text and purpose. 33 U.S.C. § 1251(b). Therefore, *Amici* support the positions of the Commission (here, Respondent) and the Agency (here, Intervenor-Respondent) that Vermont has not waived its Section 401 authority, and the Court should deny the petitions.

# BACKGROUND

## I.      Section 401 of the Clean Water Act in the Hydropower Context

As explained in more detail in the Commission's brief, the Commission issues federal licenses to construct and operate hydroelectric projects. *See S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547 U.S. 370, 385–86 (2006) (citing 16 U.S.C. §§ 792, 817(1)). Because these projects result in discharges into waterways, Section 401 of the Act empowers states to certify (with or without conditions) that projects adhere to state water quality standards and other requirements of state law. 33 U.S.C. § 1341. Any state-imposed conditions become part of the federal license. *See* 33 U.S.C. § 1341(d). If a state instead denies a request for a Certificate, then no federal "license or permit shall be granted." 33 U.S.C. § 1341(a)(1).[1]

The state must "act" within one year of receiving a certification request; when a state "fails or refuses to act" on the request within one year, its certification authority "shall be waived." *Id.* The Commission is responsible in the first instance for determining whether a state has waived. 18 C.F.R. § 5.23(b)(2). Section 401's one-year waiver provision prevents states from indefinitely delaying federal licensing proceedings; however, waiver has "significant" consequences for states, the public, and the environment, as it can allow projects to operate in violation of

---

[1] The Commission separately evaluates environmental impacts and the public interest before granting a license, which carry terms of at least thirty years and up to fifty years. *See* 16 U.S.C. §§ 797(e), 808(e).

state water quality standards for up to fifty years. *See Cal. State Water Res. Control Bd. v. FERC*, 43 F.4th 920, 924 (9th Cir. 2022).

## II.     The Morrisville Developments and the 2016 Certificate

Morrisville owns four hydroelectric Developments on the Lamoille River and tributaries within the Basin in north-central Vermont: Green River, Lake Elmore, Morrisville, and Cadys Falls.

On August 28, 1981, the Commission issued a license to the Developments, incorporating the terms of a Certificate issued by the Agency at that time. This license expired on April 30, 2015. Order Addressing Arguments Raised on Rehearing, 174 FERC ¶ 61,141, at 3 (Feb. 24, 2021) (Rehearing Order); Order Issuing License, 16 FERC ¶ 62,346, at 63,636 (Aug. 28, 1981). Before the license expired, Morrisville filed a timely application with the Commission for relicensing, which remains pending. Currently, the Developments operate under an annual license, which incorporates the 1981 Certificate's conditions. Rehearing Order at 3. Under these outdated provisions, the Developments have altered the stability and flow of the river, degrading biological and aesthetic resources, obstructing fish nurseries, and adversely affecting recreation.

The Lamoille River flows into Lake Champlain, an iconic lake between New York and Vermont bordering Canada, which has experienced severe water quality challenges in recent years. In the Basin, the Developments' biological harms are

significant. Nesting loons, spawning bass, and trout need stable, naturally varying water levels to sustain their lifespans.[2] The 1981 Certificate authorized minimum flows deviated from natural flows (true "run of the river") (Green River at 5.5 cubic feet per second; Morrisville at 135 cubic feet per second, and Cadys Falls at 150 cubic feet per second). Order Issuing License at 63,638 (implementing conditions from the 1981 Certificate agreement). Today, the Developments' operations result in a lack of spawning habitat for native fish, a decrease in dissolved oxygen, and higher water temperatures due to lack of river flow. FERC, Final Environmental Assessment for Morrisville Hydroelectric Project 22–23 (Dec. 16, 2014), Accession No. 20141216-3042 (Final Environmental Assessment).

On January 30, 2014, Morrisville submitted its first certification request to the Agency. Declaratory Order on Waiver of Water Quality Certification, 173 FERC ¶ 61,156, at 4 (Nov. 19, 2020) (Declaratory Order). After proposing different flow measures and a phase in approach, and as discussed in more detail below, Morrisville proceeded to withdraw and refile their request to the Agency

---

[2] *See, e.g.,* American Whitewater & Vermont Paddling Club Response to Revised Draft Water Quality Certification 1, 20–22 (Apr. 29, 2016), FERC Accession No. 20160510-5118 (American Whitewater & Vermont Paddling Club). Throughout this brief, citations to documents in the record are identified by their FERC-designated "Accession" numbers and are accessible in the FERC docket for the Developments, Project No. 2629.

three times. The Agency "acknowledge[ed] receipt" by letter. *Id.* at 3. On August 9, 2016, the Agency issued the 2016 Certificate.

The delayed 2016 Certificate at issue here requires far greater protections for water quality: the flow criteria are more specific, changing depending on the seasons and the proposed upgrades of the Developments' bypass valves, and overall, the conditions seek to mimic the rivers' natural flows. 2016 Certificate at 50–54. As ultimately finalized following judicial appeals, the 2016 Certificate includes increased flow rates at each of the three Morrisville developments; changes to winter drawdown conditions, based on the Agency's recommendations, to protect aquatic habitat; and scheduled dam releases for whitewater paddlers. *In re Morrisville Hydroelectric Project Water Quality,* Decision on Merits Following Remand, No. 103-9-16 Vtec, 2020 WL 5753099 (Vt. Super. Aug. 26, 2020). The ecological improvements that are proposed in the 2016 Certificate are necessary to meet the Standards, as determined by the Agency and the Vermont Supreme Court. If the 2016 Certificate is nullified the project would operate in violation of the Standards. *See generally In re Morrisville Hydroelectric Project Water Quality*, 224 A.3d 473 (Vt. 2019).

The ecological health of the area around the Developments is critical to support healthy fish and other aquatic species' populations. For example, "[the Agency] considers the Green River[,] [a major Lamoille River tributary,] an

important nursery area and cold water refuge for [trout] populations." Final Environmental Assessment at 29. The Lamoille and Green Rivers contain "substantial fish and wildlife resources," with wild brook, brown, and rainbow trout, yellow perch, pumpkinseed, smallmouth and largemouth bass, brown bullhead, chain pickerel, and northern pike. U.S. Dep't of Interior, Comments, Recommendations, Prescriptions 4 (Dec. 31, 2013), Accession No. 20131231-5199 (U.S. Dep't of Interior). Yet, insufficient flows through the Developments depress the number of fish species in the watershed. Native Vermont fish species upstream and downstream of the Developments depend on stable water temperature and dissolved oxygen to thrive. Final Environmental Assessment at 25. Measures taken from the 2016 Certificate to adjust the flow would support the fish nurseries downstream. Without the 2016 Certificate, the flows through the Developments will not match the true flows of the rivers needed to support the surrounding ecosystems. *Id.* at 34; 2016 Certificate at 24–25, 130–32.

The Basin is a vital natural resource for Vermonters. The waterways connected to the Developments offer recreational fishing and boating activities, and a lack of river flow limits these. The conditions in the 2016 Certificate are necessary to ensure that recreational use of waters is maintained as required by the Standards. The Developments' area is also home to seven rare plant species such as the Muskflower, Hayden's Sedge, and Whorled Watermilfoil; as well as one

state-listed endangered freshwater mussel species, the Cylindrical Papershell. 2016 Certificate at 32. Morrisville controls whitewater releases, which affect recreation, and the releases are unscheduled and on a case-by-case basis. Final Environmental Assessment at 56. Without predictable and sufficient water releases, whitewater rafters, lake fishers, and sport fishers cannot use and enjoy the Green River. American Whitewater & Vermont Paddling Club at 4–5. The 2016 Certificate requires whitewater releases on a scheduled, consistent basis. This would bring additional whitewater rafters and other recreational groups to the area, providing meaningful economic value to the local communities. Final Environmental Assessment at 53–56, 58–60.

## III.   Procedural Background

On January 30, 2014, Morrisville applied for a new Certificate from the Agency in connection with its application to the Commission for a new license for the Developments. Declaratory Order at 1–3. Morrisville began discussions with the Agency in October 2014 regarding alternate flow rates for the Developments. As a result of the discussions, Morrisville believed that "[the Agency] would issue a water quality certification with 'unfavorable conditions,' but if [Morrisville] were to withdraw and refile, there was a possibility [the Agency] would issue a water quality certification with conditions acceptable to Morrisville." *Id*. at 1, 4. In November 2014, Morrisville subsequently withdrew and resubmitted its

application to "accommodate review of various proposals, including their recently submitted phase-in proposal." *Id*. at 5.

In August 2015, Morrisville asked the Agency if it could again withdraw and resubmit the application to "revise a river flow analysis and littoral report, consider the use of micro-turbines, and to develop a cost/benefit plan for various factors." *Id*. at 6. Morrisville stated that it did not want the Agency to issue a Certificate until Morrisville could consider these other options. *Id*. at 6. The Agency did not respond. On September 9, 2015, Morrisville nevertheless withdrew and resubmitted its application. *Id.* at 7.

In August of 2016, eleven months after the second withdrawal-and-resubmission, the Agency timely issued a Certificate under Section 401 of the Act. *Id.* at 8. Morrisville appealed the conditions of the 2016 Certificate first to the Environmental Division of the Vermont Superior Court and subsequently to the Vermont Supreme Court. *Id.* As relevant here, the Vermont Supreme Court ultimately upheld strong water quality protections for the 2016 Certificate, including provisions regarding increased flow, winter drawdown requirements to protect aquatic habitat, and timed release of waters for recreational paddlers at the Green River Development. *See generally In re Morrisville Hydroelectric Project Water Quality*, 224 A.3d 473 (Vt. 2019).

In January 2019, this Court issued its opinion in *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099 (D.C. Cir. 2019), *cert. denied* 140 S. Ct. 650 (2019). On May 28, 2020, seizing on the Court's holding in *Hoopa Valley*, Morrisville petitioned the Commission for a determination that the Agency waived its Section 401 authority based on an alleged perceived agreement between the Agency and Morrisville. Declaratory Order at 1, 9, 20. On November 19, 2020, the Commission denied the petition. *Id.* at 25. The Commission ruled: (1) an applicant unilaterally withdrawing its Certificate request to avoid unfavorable conditions is insufficient to establish a state's waiver; (2) differences between resubmissions of applications are not relevant to waiver, unless there is a functional agreement between the parties; and (3) the Agency's acceptance of Morrisville's decision to withdraw and resubmit its application was not a functional agreement. The Commission concluded that the Agency's actions did not constitute a basis to find Section 401 waiver. *Id.* at 21–22, 24. On rehearing, the Commission sustained its denial. Rehearing Order at 10.

On January 26, 2021, and then on April 23, 2021, Morrisville petitioned this Court to seek review of whether the Agency had waived its Section 401 certification authority. Morrisville then successfully moved to hold the case in

abeyance pending the outcome of the *KEI (Maine)* matter, a similar matter then

pending and presenting facts comparable to this case.[3]

Following the abeyance, the parties continued to correspond about the

implementation of the 2016 Certificate.[4] On December 19, 2023, the Court lifted

the abeyance and is now considering the merits.

**ARGUMENT**

I.    **The State Did Not Waive Its Clean Water Act Section 401 Authority.**

Section 401 preserves timely-exercised state authority as a component of the

Act's cooperative federalism framework for protecting water quality. A finding of

---

[3] *See generally* KEI (Maine) Power Mgmt. (III) LLC, 173 FERC ¶ 61,069 (Oct. 15, 2020), *appeal dismissed*, No. 20-1303, 2023 WL 3772282 (D.C. Cir. June 1, 2023) (KEI Maine Power).

[4] *Amici* have also attempted to address the urgent need for greater water protection through advocacy at the Commission. *See* Enforcement Request (Apr. 1, 2022), Accession No. 20220401-5138; Response to Request for Technical Conference on Annual License Conditions (May 24, 2023), Accession No. 20230524-3000; Request for FERC to Incorporate State Certificate (Dec. 20, 2023), Accession No. 20231220–5062. Morrisville has repeatedly opposed these efforts, in part on the ground that it now says it has no intention of complying with the 2016 Certificate at the Green River Development and plans to, but has not initiated, decommissioning. In February 2022, Morrisville filed an application for an administrative amendment requesting the Commission split the license. *See* Application for Administrative Amendment (Separation of Units of Development) (Feb. 15, 2022), Accession No. 20220215-5108. Morrisville argued separation was necessary because implementing the 2016 Certificate would "reduce average annual generation [at the Green River Development] by approximately 50 percent," rendering it economically infeasible to continue operation at the site. *Id.*; *see generally* Response to Additional Information Requests (Mar. 12, 2024), Accession No. 20240312-5072.

waiver here would undermine Vermont's fair and orderly process for considering Certificate applications under Section 401. *See* Waiver of the Water Quality Certification Requirements of Section 401(a)(1) of the Clean Water Act, 86 Fed. Reg. 16,298, 16,300 (June 28, 2021).

Finding waiver would also degrade water quality and result in violations of the Standards, contravening the Act's goal of assuring compliance with those Standards. As the United States Supreme Court has recognized, Section 401's purpose is to ensure states can regulate water quality and flow, which is crucial for all uses protected under state water quality standards. *PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 719 (1994) ("[W]ater quantity is closely related to water quality; [and] a sufficient lowering of the water quantity in a body of water could destroy all of its designated uses, [such as] drinking water, recreation, navigation or, as here, as a fishery."). Incorporating the 2016 Certificate's conditions into the license would prevent undue degradation of the Basin's ecological health and recreational opportunities and ensure that the Developments comply with the Standards.

Morrisville's purported concerns of eternal delay are utterly misplaced. The delays here have been caused by Morrisville and have rewarded Morrisville with outdated 1981 Certificate conditions at the expense of Vermont's natural resources.

A waiver finding would perpetuate this unacceptable status quo that is resulting in ongoing violations of the Standards.

**A. The Clean Water Act Text and Purpose Protects State Authority.**

This case hinges on a fragment of Section 401's language: if the Agency "fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application." 33 U.S.C. § 1341(a)(1). Section 401 "does not define 'failure or refusal to act.'" *Hoopa Valley*, 913 F.3d at 1104 (quoting 33 U.S.C. § 1341).

The waiver provision of Section 401 is intended to prevent the certifying state from "indefinitely delaying a federal licensing proceeding" and "to ensure that '*sheer inactivity by the State* . . . will not frustrate the Federal application.'" *Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963 (D.C. Cir. 2011) (quoting H.R. Rep. 91-940, at 56 (1970), reprinted in 1970 U.S.C.C.A.N. 2691, 2741) (emphasis added); *see also* 91 Cong. Rec. H2691, at 9264 (daily ed. April 16, 1969) ("The failure by the State *to act in one way or the other* within the prescribed time would constitute a waiver of the certification required as to that State.") (emphasis added).

On January 30, 2014, Morrisville submitted its first certification request to the Agency. Declaratory Order at 4. On February 3, 2014, the Agency

"acknowledge[ed] receipt" through letter and confirmed the application as "administratively complete." *Id.* at 3. In June 2014, Morrisville proposed different flow measures and a phase-in approach for the conditions. *Id.* at 4. The Agency reviewed the proposal but found the proposal in non-compliance with the Act and Standards. Vt. Dep't of Envtl. Conservation, Morrisville Hydroelectric Project – Water Quality Certification Response to Public Comments 16–17, 32–33 (2016), https://dec.vermont.gov/sites/dec/files/wsm/public-notices/401/Morrisville %20ResponseSummary_401WQC.pdf. Furthermore, despite Morrisville asserting the conditions would affect the Green River development's flood protection function, Morrisville did not provide information that would allow the Agency or the Commission to "evaluate downstream flood protection and the potential risk of increased spillage of the Green River [development]." *Id.* at 14–15.

On November 7, 2014, Morrisville withdrew its Certificate application and resubmitted it restarting the one-year waiver clock. Declaratory Order at 5. The Agency "acknowledg[ed] receipt of the simultaneous withdrawal and refiling of the application on the same day." *Id.* Morrisville again withdrew its application and resubmitted a third request on September 9, 2015. *Id.* at 7. That day, the Agency "acknowledged receipt of the simultaneous withdrawal and refiling of the application." *Id.* The waiver clock restarted for the final time. On August 9, 2016, the Agency issued the 2016 Certificate, one month before waiver would apply. *Id.*

at 8. Thus, the Agency acted within the meaning of Section 401 on the only application that was not withdrawn.

There was no waiver here under Section 401, as the Commission concluded. *Id.* at 5. Again and again, Morrisville unilaterally withdrew and resubmitted its Certificate requests, depriving Vermont of opportunities to act on its initial applications. Each time Morrisville withdrew and resubmitted its application, the clock for waiver restarted. *N.Y. State Dep't of Envtl. Conservation v. FERC*, 991 F.3d 439, 450 (2d Cir. 2021) (citing Rehearing Order); *see also* 86 Fed. Reg. at 16,299 (noting Commission's practice to "deem the one-year waiver period to commence when the certifying agency receives the request"). Under any plausible reading of the statutory text, Vermont did not "fail[] or refuse[] to act" in reviewing Morrisville's application for a Certificate; it timely issued the 2016 Certificate within one year of the only non-withdrawn application it received.

## B. In *Hoopa Valley*, Waiver Is Limited to Functional or Contractual Agreement Between an Agency and Applicant—Not Unilateral Withdrawals.

Contrary to Morrisville's arguments, this Court's decision in *Hoopa Valley* does not permit the Court to find waiver in this case. *Hoopa Valley* arose from a deliberate stalling agreement between the agencies and the applicant, seeking to address state practices that "circumvent a congressionally granted authority over the licensing, conditioning, and developing of a hydropower project." 913 F.3d at

1104. For a state certifying body to run afoul of the *Hoopa Valley* standard, an agency and an applicant must have some type of agreement or accord that effectuates waiver, whether of a contractual or purely a functional variety. *Id.* (finding contractual agreement when "licensee enter[s] a written agreement with the reviewing state[] to delay water quality certification"); Placer Cnty. Water Agency, Declaratory Order on Waiver of Water Quality Certification, 167 FERC ¶ 61,056, at 12 (Apr. 18, 2019) (finding functional agreement when agency and applicant coordinate efforts to pause licensing process).

The functional agreement standard that the Commission has traditionally used distinguishes between good-faith communication and illegitimate agreements to find waiver. A state directing the withdraw-and-resubmit scheme is sufficient to find waiver. *N.C. Dep't of Envtl. Quality v. FERC*, 3 F.4th 655, 670 (4th Cir. 2021). Depending on the facts, an agency acting beyond procedural requirements to encourage a serial withdraw-and-resubmit scheme may result in waiver. Pac. Gas and Elec., Declaratory Order on Waiver of Water Quality Certification, 170 FERC ¶ 61,232, at 31 (Mar. 19, 2020). "Direct participation" in the scheme by the certifying authority is also sufficient. S. Cal. Edison Co., Declaratory Order on Waiver of Water Quality Certification, 170 FERC ¶ 61,135, at 24 (Feb. 20, 2020). Fundamentally, both agency and applicant must act "pursuant to an agreement" to circumvent federal requirements to waive such state

17

authority. *Hoopa Valley*, 913 F.3d at 1104. The *Hoopa Valley* waiver jurisprudence does not apply to cases like this one where the facts are clear that no such agreement existed.

Morrisville's argument that the *Hoopa Valley* "failure to act" standard controls the statutory timeline of the Agency's authority to regulate misconstrues this Court's holdings. Only "a *state's* 'dalliance or unreasonable delay'" constitutes waiver under the Act. *Hoopa Valley*, 913 F.3d at 1104–05 (quoting 115 Cong. Rec. 9264 (1969)) (emphasis added). Just as it did not "fail" or "refuse" to act under the Act's plain terms, nor did the state engage in the process of a repeated withdrawal-and-resubmittal scheme as corollary to a contractual delay agreement, as in *Hoopa Valley. Id.* at 1104 (holding that "deliberate and contractual idleness" on a state's behalf precipitates Section 401 waiver).

Morrisville's argument that would reframe the Agency's behavior as waiver misapplies the statutory standard and misconstrues the case law. This Court's opinion in *Hoopa Valley* and its progeny point to the Section 401 mandate of state action within one year of the request for certification; an *applicant's* decision to withdraw and resubmit does not constitute such delay. *Id.* at 1100; *see also* KEI (Maine) Power. Once Morrisville withdrew its applications, the Agency had no ability to take any action on them because there were no Section 401 applications

to act on. *Cal. State Water Res. Control Bd. v. FERC*, 43 F.4th 920, 936 (9th Cir. 2022

### C. The Record Here Shows Morrisville Unilaterally Withdrew and *Hoopa Valley* Does Not Apply.

This Court has consistently applied Congress's intent in the Act's terms, "fail[ure] or refus[al]," to state agencies using their certification powers to vex the federal relicensing process—an objective wholly absent here. *Turlock Irrigation Dist. v. FERC*, 36 F.4th 1179, 1181 (D.C. Cir. 2022) (noting spectrum of state behavior from cooperation to obstruction).

The record demonstrates that the Commission correctly categorized as legitimate the state's sound approach here—to work harmoniously with hydropower licensing applicants and avoid discord in the federal relicensing process. The Agency had authority under Section 401 to defer to Morrisville to refile subsequent applications as a means of "accommodat[ing] review of various proposals." Declaratory Order at 5. The Agency's approach here provided the same latitude to the applicant—that is, to refile for its own benefit—that the Commission and courts have ruled does not constitute waiver. *See, e.g*., KEI (Maine) Power at 42 (finding no waiver when applicant resubmitted to avoid unfavorable Certificate conditions); *N.C. Dep't of Envtl. Quality*, 3 F.4th at 669 (finding no waiver when applicant and agency did not have a contractual, nor a functional, agreement).

To claim the Agency's good-faith communication with Morrisville somehow circumvents the Act twists this Court's reasoning in *Hoopa Valley*. At most the record shows the Agency's willingness to work with a hydropower applicant on a sustainable set of Certificate conditions that would protect the state's beloved Green and Lamoille Rivers. As the Commission found, correspondence between the parties in the record provides no grounds for Morrisville to claim that a functional agreement between the parties existed that would trigger waiver under *Hoopa Valley*. Declaratory Order at 10; *see also* Respondent Brief at 39-49.

The motivations of the parties were clear: Morrisville wished to avoid unfavorable Certificate conditions, and the Agency was continually prepared to issue a timely Certificate containing conditions requiring adherence to the Standards. In short, the Agency's communication with Morrisville as applicant, and its accommodation of resubmissions in 2014 and 2015, falls squarely within Vermont's authority to consider its own interests in applying the Standards to a Section 401 review process. *See infra* § I.D (cooperative federalism); *Hoopa Valley*, 913 F.3d at 1101 (positioning "state's water quality review" as a "precondition to any federal hydropower license issued by [the Commission]").

This Court should find that the Agency's engagement with Morrisville fell within the Agency's rightful purview under the Act, and in no way amounted to a *Hoopa Valley* circumvention of federal authority.

### D. Waiver Would Profoundly Undermine Section 401's Purposes, Including Cooperative Federalism.

Here, Vermont manifestly had the authority to stand by as Morrisville withdrew and resubmitted its request in its best interests. As discussed above, the Agency never waived its Section 401 certification authority irrespective of Morrisville's unilateral choice to withdraw and resubmit. *See Hoopa Valley,* 913 F.3d at 1103; *Turlock*, 36 F.4th at 1181; KEI (Maine) Power at 46. For this Court to hold otherwise would destabilize state regulatory frameworks for protecting water quality and abridge the cooperative federalism that animates the Act.

The Act preserves a robust role for states to ensure that federal projects meet minimum state water quality standards through the conditions of a Section 401 Certificate. *New York v. United States*, 505 U.S. 144, 167–68 (1992) (discussing cooperative federalism). Indeed, as the Supreme Court has affirmed, the Act grants states expansive power to address hydroelectric projects' impacts on water quality, permitting Certificates to require that projects adhere to "any other appropriate requirement of State law." *PUD No. 1,* 511 U.S. at 713; 33 U.S.C. § 1341(d). Waiver here would deeply threaten these statutory purposes.

21

The Act's "national goal" is to achieve "water quality [providing, among other things,] for the protection and propagation of fish . . . and . . . for recreation." 33 U.S.C. § 1251(a)(2). Therefore, federally-licensed hydroelectric projects can affect water quality and implicate state's water protection policies through the Section 401 process. *S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547 U.S. 370, 385–86 (2006). These projects present risks such as "limiting river flow and releasing water through turbines, changes in the river's flow, movement, and circulation." *Id.*

States' power to regulate hydroelectric developments' potential environmental impacts under Section 401 reflects Congress's intent that the Act "preserve state authority to address the broad range of pollution" when reviewing the water quality impacts of hydroelectric projects. 116 Cong. Rec. 8984, 15608 (1970) (statement of Sen. Edmund Muskie). To disallow states their authority to protect the quality of their waterways would go against the Act's original purpose that states should play a central role in combatting environmental degradation within their borders.

States rely on Section 401 to protect their aquatic resources and ensure that a hydroelectric project meets state water quality standards. Finding waiver of a state's Section 401 certification eliminates a state's sole opportunity to review,

shape, and object to federal licensing of a hydroelectric project if it would violate state water quality standards, as it would in this case.[5]

Finding waiver here would undermine Section 401's purpose to preserve state authority to ensure compliance with state water quality standards. Vermont Water Quality Standards, § 1-01(A) (2014), https://dec.vermont.gov/sites/dec/files/wsm/mapp/docs/WSMD_WaterQualityStandards_2014.pdf; 10 Vt. Stat. Ann. § 1250 (2014). In particular, the Agency must find "reasonable assurance that the activity will be conducted in a manner which will not violate applicable water quality standards." 40 C.F.R. § 121.2(a)(3); 2016 Certificate at 36. Under Vermont law and consistent with federal regulations, "Vermont … implements the … Act through the . . . Standards, adopted by the Secretary of [the Agency]." 10 Vt. Stat. Ann. §§ 1250, 1251(a) (2015); Vt. Agency Nat. Res., Dep't of Envtl. Conservation, Morrisville Hydroelectric Project – Water Quality Certification: Response to Public Comments 3 (Aug. 9, 2016) https://dec.vermont.gov/sites/dec/files/wsm/public-notices/401/Morrisville%20ResponseSummary_401WQC.pdf. The Agency may

---

[5] U.S. EPA, Clean Water Act Section 401 Water Quality Certification: A Water Quality Protection Tool for States and Tribes 1 (2010), https://archive.epa.gov/epa/sites/production/files/2016-11/documents/cwa_401_handbook_2010.pdf (including information on how states can use §401 certification to protect wetlands and other aquatic resources.).

set Standards to protect the uses of the waters and ensure the water quality supports those uses. 2016 Certificate at 36.

Here, the Developments' current operation interferes with water quality and designated uses in the Basin, in violation of the Standards. As stated earlier, irregular whitewater releases prevent whitewater rafters and fishers from using the Green River (American Whitewater & Vermont Paddling Club at 4–5), and such an inconsistent water flow reduces fish populations. Final Environmental Assessment at 29.[6] The Developments have also suppressed dissolved oxygen levels and prevented a healthy water temperature, both of which can cause aquatic habitats to suffer. *Id.* at 25. Encroachment, channel erosion, and land erosion all threaten endangered plant life and loon nesting around the shore. *Id.* at 20–22, 29.

Perversely, finding waiver here could lead to states, in future cases, denying certificate applications outright rather than accommodating revision and resubmittal. That could result in states, through these denials, "usurp[ing] [the Commission's] control over whether and when a federal license will issue" by "indefinite[ly] delay[ing] federal licensing proceedings and undermining [the Commission's] jurisdiction to regulate such matters." *Hoopa Valley*, 913 F.3d at 1004. This line of reasoning would complicate and obstruct the orderly and timely

---

[6] *See also* Agency of Nat. Res. Watershed Mgmt. Div., Lamoille: 2016 Tactical Basin Plan 1 (2016), https://dec.vermont.gov/sites/dec/files/wsm/mapp/docs/2016-12-30_Lamoille_Tactical_Plan_FINAL.pdf.

processing of hydropower licenses and other federal approvals requiring state certification. Furthermore, a practice of more frequent and inflexible denials would contravene the state-federal regulatory partnership. Declaratory Order at 1, 4; *Turlock*, 36 F.4th at 1184 (defining parameters of application denial); *N.C. Dep't of Envtl. Quality*, 3 F.4th at 674 (categorizing "denial of certification" as antagonistic to applicant's aims).

Accepting Morrisville's erroneous legal arguments to evade the requirements of the 2016 Certificate would jettison Vermont's authority to safeguard water quality, recreational values, and environmental protection, contrary to the Act's purposes. The Court should affirm the Commission's finding that Vermont did not waive its Section 401 authority here.

## II.     Finding Waiver Would Jeopardize Vermont's Natural Resources.

Morrisville's Developments have altered Vermont's riverine ecosystems, perhaps irreparably. Without the 2016 Certificate, the Basin cannot provide a haven for flora and fauna such as Hayden's Sedge; the Cylindrical Papershell, a state-listed endangered freshwater mussel species; and Vermont's many fish species listed above. 2016 Certificate at 32. Under the Act, Vermont has the authority and responsibility to ensure that federally licensed hydroelectric developments comply with the Standards. Morrisville will only comply with

Vermont's Standards if the 2016 Certificate's conditions are implemented into the

final license. If not implemented, significant environmental harms will continue.

        **A.    The Morrisville Developments Are Degrading Vermont's Water Quality.**

In 1988, the Vermont Department of Environmental Conservation

(Department), which is part of the Agency, submitted an assessment to the

Commission on the effect of hydropower on the environment. The Department

recognized that "hydropower can conflict with [the] goals" of the Standards and

stream classification. Vt. Agency of Nat. Res., Hydropower in Vermont: An

Assessment of Environmental Problems & Opportunities, Volume I: Summary of

Study & Results viii (1988), https://dec.vermont.gov/sites/dec/files/wsm/rivers/

docs/rv_hydropowerinvermontvol1.pdf. The Department stated:

> Artificial regulation of natural stream flows and the lack
> of adequate minimum flows of these sites have reduced
> to a large extent the success of the state's initiatives to
> restore the beneficial values and uses of which the
> affected waters are managed. The flow regulation has a
> significant effect on water quality, fisheries and other
> aquatic biota, assimilative capacity, recreational uses,
> aesthetics, wildlife habitat, and natural area values of
> affected streams.

*Id.*

The Department went on to explain that Vermont's hydroelectric

developments had degraded water quality and that the "usefulness of the resource

for purposes other than power production has been reduced, and in some cases,

virtually eliminated." *Id.* at 1–2. Furthermore, "aquatic communities have changed or been lost entirely." *Id.*

Without the 2016 Certificate conditions, it is unlikely the ecosystem and water quality will recover from the Developments' influence. Implementing the 2016 Certificate conditions will require that Morrisville's operations "fully support[] water character, flows, water level, bed and channel characteristics, and water of a quality that consistently exhibits good aesthetic value." Vt. Agency Nat. Res., Dep't Envtl. Conservation, Morrisville Hydroelectric Project – Water Quality Certification: Response to Public Comments 14 (Aug. 9, 2016) https://dec.vermont.gov/sites/dec/files/wsm/public-notices/401/Morrisville%20 ResponseSummary_401WQC.pdf; *See also* Vermont Water Quality Standards, § 3-04(A)–(B)(2) (2014), https://dec.vermont.gov/sites/dec/files/wsm/mapp/docs/ WSMD_WaterQualityStandards_2014.pdf (stating aesthetic quality standards for Class B waters).

The 2016 Certificate protects these values, and finding waiver undermines the State's authority to use its certification power to protect water quality.

### B. Finding Waiver Would Further Endanger the Ecological Health of Aquatic Habitats in Vermont.

Today, the Developments still operate under the 1981 Certificate's conditions, resulting in significant environmental harms. The conditions from the

2016 Certificate will rectify those harms. New flow management is a key part of returning the ecosystem to its original state, and "operational changes [in the generational flows] will reduce impacts to aquatic biota and habitat" at the Developments. 2016 Certificate at 46–47.

Adverse environmental impacts will happen without changes in Morrisville's operations, such as a dry riverbed in bypass reaches in the summer, a lack of spawning habitat for native fish, impacts on macroinvertebrate populations, a decrease in dissolved oxygen, and higher water temperatures due to lack of river flow. 2016 Certificate, at 10–11, 20, 24–25.

The water flow and conditions from the 2016 Certificate will stabilize the habitats within the Basin's ecosystem, ensuring the growth, survival, and abundance of plants and wildlife. The Basin contains "substantial fish and wildlife resources," with abundant species of trout and other fish. U.S. Dep't of Interior, *supra*, at 4. There are seven rare plant species in the vicinity, including the Muskflower, Hayden's Sedge, and Whorled Watermilfoil, and one state-listed endangered species, the Cylindrical Papershell. 2016 Certificate at 32. The Common Loon is another species that lives in the Green River Development and requires a stable reservoir elevation maintained from May to August at three inches below the development crest. 2016 Certificate at 31, 40, 44.

The Agency, the Vermont Supreme Court, the Vermont Environmental Court, and the U.S. Department of the Interior all agree that natural flows ensure the maximum amount of healthy habitat for all species. 2016 Certificate at 10–12.[7] Implementing the 2016 Certificate conditions would restore the natural flow regime and prevent the dewatering of wetlands and aquatic habitat, preserving animal life. *See* Vermont Water Standards, §§ 3-04(A)(1), (B)(4) (2014).

### C. Finding Waiver Would Destroy Recreational Opportunities for Vermonters.

"Vermont['s] . . . Standards require that . . . waters be managed to fully support boating, fishing, and other recreational uses through the achievement and maintenance of a level of water quality that is suitable and compatible with these uses." 2016 Certificate at 45; Vermont Water Quality Standards, §§ 3-04(A)(6), (B)(7) (2014).

---

[7] *In re Morrisville Hydroelectric Project Water Quality*, 224 A.3d 473, 487 (Vt. 2019) (affirming Agency's power under Act and its interpretation of the Standards, "which indicate that high-quality aquatic habitat requires that 'all life-cycle functions' be protected and maintained"); *In re Morrisville Hydroelectric Project Water Quality,* Decision on Merits Following Remand, No. 103-9-16 Vtec, 2020 WL 5753099, at *17 (Vt. Super. Aug. 26, 2020) (affirming the Agency's flow rates as "consistent with the [Standards]. . . and [the Agency's] definition of high-quality habitat"); U.S. Dep't of Interior, *supra*, at 6 ("[I]t is clear that natural inflows and elimination of peaking will substantially increase habitat for all species. Therefore, the Department is recommending the project operate in true run-of-river mode with outflows equaling inflows on an instantaneous basis.").

Here, for example, two popular activities around the Green River Development are whitewater boating and fishing. The 2016 Certificate conditions are intended to maintain and improve recreational use of the rivers, including through increased water flows and scheduled releases. The Lamoille River is a "popular trout fishery." Final Environmental Assessment at 38, 41. Higher water flow conditions from the 2016 Certificate protect fish, allowing them to thrive in more natural water flows compared to the current stifled flow. 2016 Certificate at 42–43; Final Environmental Assessment at 38–40 (assessing suitable flow levels for maximum fish and nursery survival). And the scheduled releases required in the 2016 Certificate will foster whitewater boating in the waterways downstream from the Developments. *In re Morrisville Hydroelectric Project Water Quality*, 224 A.3d 473, 492-94 (Vt. 2019). The 2016 Certificate protects these recreational values.

In sum, finding waiver in this case would undermine the State's authority to use its certification power to protect ecological health, water quality, natural resources and would be in contravention of the Act's overall purpose.

## CONCLUSION

The Court should deny the petitions for review in these consolidated cases. Respectfully submitted,

AMERICAN WHITEWATER, VERMONT NATURAL RESOURCES
COUNCIL, AND VERMONT COUNCIL OF TROUT UNLIMITED

By their attorney:

/s/ Christophe Courchesne

Christophe Courchesne
Assistant Professor and Director
Environmental Advocacy Clinic
Vermont Law and Graduate School
PO Box 96, 164 Chelsea Street
South Royalton, VT 05068
(802) 831-1630 (main)
(802) 831-1631 (fax)


*With* Vermont Law and Graduate School Assistant Professor Diana Csank and
Student Attorneys Alexis McCullough, Lydia Samson, Taylor Scott Berkley,
Ashton Danneels, and Willow Hogan

Dated: June 25, 2024

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 6,497 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced 14-point roman-style typeface (Times New Roman) using Microsoft Word.

/s/ Christophe Courchesne
Christophe Courchesne
*Counsel for Amici*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 25, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system, which served a copy of the document on all counsel of record in the case.

/s/ Christophe Courchesne
Christophe Courchesne
*Counsel for Amici*