# United States Court of Appeals
# for the District of Columbia Circuit

## No. 21-1042

(Consolidated with 21-1109)

VILLAGE OF MORRISVILLE, VERMONT,

*Petitioner,*

*v.*

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

_____

VERMONT AGENCY OF NATURAL RESOURCES,

*Intervenor for Respondent.*

*On Appeal from the Federal Energy Regulatory Commission in
No. FERC-1: FERC-173FERC61156.*

## PROOF REPLY BRIEF FOR PETITIONER

CAROLYN ELEFANT
LAW OFFICES OF CAROLYN ELEFANT
7315 Wisconsin Avenue
Bethesda, Maryland 20814
(202) 297-6100
carolyn@carolynelefant.com

PAUL V. NOLAN
LAW OFFICE OF PAUL V. NOLAN
5515 17th Street North
Arlington, Virginia 22205
(703) 534-5509
pvnpvndiver@gmail.com

*Counsel for Petitioner*

September 25, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

GLOSSARY OF ABBREVIATIONS ..................................................... iv

I.      INTRODUCTION ........................................................................ 1

II.     SUMMARY OF ARGUMENT ..................................................... 2

III.    STANDING .................................................................................. 4

    A.    Morrisville Has Standing ..................................................... 4

    B.    Vermont's Arguments Opposing Standing Have No Merit .................. 6

IV.     ARGUMENT ................................................................................ 9

    A.    Section 401(A)(1) Is Clear And Unequivocal ..................... 9

    B.    Modification Of The Statute By The Abuse Of "Unilateral Action" ........ 12

    C.    Acceding To A Scheme Is An Agreement Not To Act ........ 12

    D.    There Is No Unilateral Action In The Processing Of A Certificate Application ........ 13

    E.    Unilateral Action By An Applicant Is A Fallacy ................. 16

    F.    Considerations Of *Hoopa Valley*, Issuance Of The 2016 Water Quality Certificate, And Delay ........ 19

    G.    The Public Interest Is Best Served By Transparent Agency Action ........ 22

V.      CONCLUSION ............................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alcoa Power v. FERC*,
 643 F.3d 971 ...............................................................................6

*Brookfield White Pine Hydro LLC, v.*
 *FERC and American Whitewater, et al.*,
 __ F.4th _, 2024 U.S. App. LEXIS 16475 (D.C. Cir. 2024) .....3, 4, 22, 23, 25

*Central Vermont Public Service Corporation*,
 113 FERC ¶61,167 ......................................................... 19, 20, 22

*City of Oberlin v. FERC,*
 937 F.3d 599 (D.C. Cir. 2019).......................................................8

*Hoopa Valley Tribe v. FERC,*
 913 F.3d 1099 (D.C. 2019).........................................................19

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992)....................................................................4

*Millennium Pipeline Co. v. Seggos*,
 860 F.3d 696 (D.C. Cir. 2017)................................................ 6, 22

*N.Y. Dep't of Env't Conservation v. FERC*,
 884 F.3d 456 ............................................................................23

*Nevada Irrigation District*,
 187 FERC ¶ 61,095  (2024)................................ 3-4, 16, 22, 23, 25

*Pac. Gas & Elec. Co. v. Fed. Energy Regulatory Comm'n,*
 No. 23-1041 (D.C. Cir. Aug. 23, 2024)...........................................4

*Sierra Club v. United States Dep't of Energy*,
 No. 22-1218 (D.C. Cir. July 16, 2024)...........................................5

*Tower Kleber Limited Partnership*,
 186 FERC ¶ 61,149 .........................................9, 10, 11, 16, 22

*Turlock Irrigation District, et al. v. FERC,*
 36 F.4th 1179 (D.C. Cir. 2022)..............................................9, 10

*Twin Rivers Paper Co. v. SEC*,
 934 F.3d 607 (D.C. Cir. 2019)..................................................5, 6

*Vill. of Morrisville, Vermont,*
    173 FERC ¶61,156 ¶ 61,156 (2020) ...............................................................7


**Statutes & Other Authorities:**

U.S. Const. Art. III ...............................................................................2, 4, 24

14 C.F.R. § 61.51(d) ........................................................................................17

18 C.F.R. § 5.32(b)(2) .....................................................................................18

40 C.F.R. § 121.7(e)(1) ...................................................................................23

33 U.S.C. § 1341 ...........................................................1, 2, 6, 9, 15, 26

33 U.S.C. § 1341(a) .........................................................................................1

33 U.S.C. § 1341(a)(1)............................................... 1, 9, 12, 16, 19, 23, 24, 25, 26

2022 Vermont Water Quality Standards § 29A-206 ...............................................15

Vermont Agency of Natural Resources 2014 *Water Quality Certification*
    *Practice* manual (practice manual)
    https://anr.vermont.gov/content/section-401-water-quality-
    certification-practices .......................................................................................15

*Vill. of Morrisville, Vermont,*
    Notice of Denial of Rehearing by Operation of Law and Providing
    for Further Consideration, 174 FERC ¶ 62,040 (2021).....................................7

*Vill. of Morrisville, Vermont,*
    Order Addressing Arguments Raised on Rehearing, 174 FERC ¶
    61,141 (2021).....................................................................................................7

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Add. | Addendum |
| ANR | Vermont Agency of Natural Resources |
| Br. | Opening Brief of Petitioner Morrisville |
| Challenged Orders, FERC Orders | Declaratory Order and Rehearing Order |
| Commission or FERC | Federal Energy Regulatory Commission |
| CWA or Act | Clean Water Act |
| EPA | US Environmental Protection Agency |
| Declaratory Order | *Vill. of Morrisville, Vermont*, 173 FERC ¶ 61,156 (2020), JA ___, R. 245, |
| Rehearing Order | *Vill. of Morrisville, Vermont*, 174 FERC ¶ 61,141 (2021), R. 253, JA _____ |
| Commission or FERC | Respondent Federal Energy Regulatory Commission |
| Filings at FERC (by date filed) | |
| November 2014 Letter | Morrisville's first withdrawal and resubmittal, attached as Petition, Appendix A, R. 223, JA ____ |

| | |
|---|---|
| September 2015 Letter | Morrisville's second withdrawal and resubmittal, attached as Petition, Appendix A, R. 223, JA _____ |
| Petition | Morrisville's May 28, 2020 Petition, R. 223, JA _____ |
| Morrisville Response | Morrisville's July 27, 2020 Response, R. 236, JA _____ |
| July 2020 Perry Memorandum | Attachment to Morrisville Response, R. 236, and Rehearing Request, R. 247, JA _____ |
| Rehearing Request | Morrisville's December 21, 2020 Request for Rehearing, R. 247, JA _ |
| December 2020 Perry Memorandum | Attachment to Rehearing Request, R. 274, JA _____ |
| JA | Joint Appendix |
| P | Paragraph in a FERC order |
| Project | Morrisville Hydroelectric Project |
| R. | Record Item in Certified Index |
| WQC | Water Quality Certification |
| 2016 WQC | Morrisville Water Quality Certification |

# I.   INTRODUCTION

The briefs by Respondents Federal Energy Regulatory Commission ("FERC"), the Vermont Agency of Natural Resources ("Vermont"), and Amici American Whitewater, et al. ("AWA") fail to address the clear statutory mandate of Section 401 of the Clean Water Act and mischaracterize the facts surrounding Vermont's waiver of its certification authority. In doing so, the Commission and Vermont pivot from and ignore the clear and unambiguous language of Section 401(a)(1) of the Clean Water Act, 33 U.S.C.S. § 1341(a)(1) of the Clean Water Act that a certifying agency must take action upon an application for certification within one year. Instead, the Commission and Vermont focus upon the motives of Morrisville by claiming that Morrisville acted unilaterally for its own benefit. Such arguments do not absolve Vermont of its failure to act upon the application in a reasonable period of time not to exceed one year and glosses over the requirements of Section 401(a) that the certification agency must take action on an application, not the applicant.

Vermont raises issue with Morrisville's standing to seek appellate review.  Amici raise issues related to environment and recreation that are beyond the scope of this proceeding.[1] Vermont contests standing while relying throughout its

---

[1] AWA has raised these same arguments before the Commission in several pleadings, including one that it has characterized as a request for rehearing. As of

brief on multiple Section 401 waiver cases, some of which Vermont was an intervenor, involving similar facts wherein standing was never contested. These arguments by Amici and Vermont can be summarily rejected.

## II.    SUMMARY OF ARGUMENT

Contrary to Vermont's claims, Morrisville unequivocally meets the requirements for standing under Article III of the Constitution, as it continues to endure a "concrete, particularized, and actual or imminent" injury directly resulting from the Federal Energy Regulatory Commission's (FERC) Orders. The injury stems from FERC's  Orders, compelling Morrisville to either comply with costly engineering studies mandated by FERC to ensure public safety put at issue by the 2016 Water Quality Certificate (WQC) or abandon its ongoing relicensing efforts, which impose significant financial burdens.  A favorable Court ruling that Vermont's Section 401 authority is waived would alleviate these injuries by eliminating the need for FERC's additional studies and costly dam refurbishments. Vermont ignores these harms and misrepresents the source of Morrisville's aggrievement as stemming from delays in the issuance of the 2016 WQC rather

---

the filing of this reply brief, the Commission has not taken any action on AWA's various filings.

than the FERC Orders under review. and substantial harm caused by FERC's Orders.

As to the merits, Vermont and amici improperly introduce extraneous factors, such as delays or environmental considerations, diverting from the statute's clear focus on the certifying agency's actions. The Environmental Protection Agency (EPA) has established that a certifying authority may act by granting certification, granting it with conditions, denying it, or expressly waiving it. Any deviation from these actions, including unilateral withdrawal and resubmission schemes by the applicant, does not alter the statute's directive.

Next, the Commission mischaracterizes Morrisville's coordinated actions with Vermont as unilateral, ignoring the collaborative nature of the withdrawal and resubmission scheme. Each instance of application withdrawal and resubmission was accepted and facilitated by Vermont, thereby negating any claim of unilateral action. The notion that Morrisville acted unilaterally fails to recognize Vermont's role in endorsing the scheme, which is contrary to the statutory interpretation and should be rejected on *de novo* review.

Granting Morrisville's petition is also consistent with the public interest, Recent decisions, such as *Brookfield White Pine Hydro LLC v. FERC* and *Nevada*

*Irrigation District*[2] underscore the importance of transparent and explicit actions by certifying agencies. These rulings affirm that agencies must adhere to clear procedural standards without allowing applicant-driven schemes to circumvent statutory deadlines. Accordingly, the Court should grant the City's petition and vacate the challenged orders.

## III. STANDING

### A. Morrisville Has Standing

The Court has an independent duty to ensure that a petitioner has standing under Article III of the Constitution and is not bound by Vermont's mischaracterizations of Morrisville's injury. Morrisville satisfies requirements of Article III standing because it continues to suffer a "concrete, particularized, and actual or imminent" injury, in fact, which is caused by FERC's Orders, and "it .. [is] likely that a favorable decision of the Court will redress the injury." *Pac. Gas & Elec. Co. v. Fed. Energy Regulatory Comm'n,* No. 23-1041, at *5-6 ((D.C. Cir. Aug. 23, 2024), *citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Morrisville is aggrieved by the Commission's Orders *i.e.,* the Challenge

---

[2] *Brookfield White Pine Hydro LLC, v. FERC and American Whitewater,* et al., __ F4th _, 2024 U.S. App. LEXIS 16475 (D.C. Cir. 2024) and *Nevada Irrigation District*, 187 FERC ¶ 61,095, P 29 (2024)(appellant review pending, *Nevada Irrigation District v. FERC*, D.C. Cir. Nos. 23-1342, et al.).

Orders. The Orders force Morrisville to decide either: (1) comply with FERC's directive issued in response to the 2016 WQC requiring costly engineering studies or (2) abandon its current relicensing effort. JA__, R. 143, JA __, R. , 147, JA __, R. 217, and JA __, R. 247 (FERC directives).[3] These choices subject Morrisville to significant financial losses, including the need to purchase more expensive replacement power, which typically uses fossil fuel, and threaten Morrisville's ability to operate the Project, a source of renewable energy, for the benefit of its citizens and ratepayers.

A favorable ruling by this Court that Vermont's Section 401 authority is waived would redress Morrisville's injuries because the costs and need for additional engineering studies and refurbishment of the dam would no longer be necessary. The harm to Morrisville caused by the Commission's Order is self-evident; so much so, that the Commission did not even bother to challenge it. *See also Sierra Club v. United States Dep't of Energy*, No. 22-1218, at *5 (D.C. Cir. July 16, 2024) *citing Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 613 (D.C. Cir. 2019) (noting that petitioner need not establish standing in opening brief when standing is "self-evident" from the administrative record).

---

[3] Additional FERC directives and extensions of time were issued. Those included in the JA are representative and relevant.

## B.  Vermont's Arguments Opposing Standing Have No Merit

Vermont, asserts that Morrisville is not aggrieved by the Commission's Orders and moves to dismiss Morrisville's petition due to a lack of standing. Vt. Br. at 13-19.  Vermont mischaracterizes      Morrisville's aggrievement as emanating from a delay in issuing the 2016 401 WQC. *Id. at* 14. Vermont supports this claim by asserting that any "injury" would stem from the need to comply with the 2016 WQC's conditions, which are not at issue before the Court.  *Id.*

The "injury" to Morrisville is caused by the FERC Orders on review, not      any delay by Vermont. Morrisville's injury arises directly from the Commission's failure to find that Vermont had waived its certification authority, a determination that only the Commission has the authority to make. *See* FERC Br. at 7.[4] Morrisville in its petition for a declaratory order asked the Commission to make the determination that Vermont's certification authority had been waived by Vermont's participation, acquiescence, and threats involving two extensions (*i.e.,* attempted resets*)* of the one-year period.  FERC in it Order on Waiver of certification Quality

---

[4] *See Millennium Pipeline Co. v. Seggos*, 860 F.3d 696, 701 (D.C. Cir. 2017), *Alcoa Power*, 643 F.3d at 971-72 (compliance with 33 U.S.C. § 1341's requirements "is a question of federal law [that is] properly put to the Commission").

Certification denied the petition for a declaratory order.[5]

The injury to Morrisville is that the denial of its petition for a declaratory order forces the municipal utility to undertake costly studies, directed by FERC, to assess whether the Green River Development can be operated "as is," and whether costly construction measures must be made to the development's spillway and barrier dike to ensure their structural integrity and ability to address flooding caused by ice jams and high flow events, etc., especially during the winter.

The nature of the injury's relation to the petition's denial is exemplified by the fact that within four (4) days after issuance of the November 19, 2020 order denying the petition, Morrisville was ordered again by the Commission to file within 60 days the engineering analysis and stability assessment previously requested by Commission. JA __, R. 246. *See also* Commission Letter (September 13, 2016), JA __, R. 143_ (directing Morrisville to conduct studies in response to identified safety assessment needs shortly after the 2016 WQC's issuance).

The FERC Orders force Morrisville to choose between:

(1) Abandoning *in toto* its relicensing effort, and the costs in resources and

---

[5] *Vill. of Morrisville, Vermont,* 173 FERC ¶61,156 ¶ 61,156 (2020), JA ___., R. 245; *see, also*. *Vill. of Morrisville, Vermont*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, 174 FERC ¶ 62,040 (2021), JA ____ R. 250, and *Vill. of Morrisville, Vermont*, Order Addressing Arguments Raised on Rehearing, 174 FERC ¶ 61,141 (2021), JA __, R. 253 (collectively FERC Orders or Challenged orders).

time associated therewith, that commenced in 2013 for the three operating developments;

(2)    Amending materially its relicensing application to eliminate the Green River Development and/or add additional turbines at its Lamoille River Developments (Morrisville and Cadys Falls), to replace the power generation associated with the Green River Development. The loss in-net investments in the development and the additional costs associated with amending the license application;

(3)    Filing license amendment applications, purchasing replacement power, etc., will be incurred by Morrisville and is directly related to the FERC Orders. This puts Morrisville at a significant risk of losing its investments in and the ability to operate the Project.

In particular, the Challenged Orders have put the Green River Development at a severe and imminent risk of being surrendered *in toto*, which, in the absence of state takeover of the dam, would require Morrisville to maintain the dam at significant future costs without revenues from its operation.

To sum, Morrisville has suffered an injury, which existed at the time it filed its petition of appellant review. This injury is "fairly" traceable to the challenged FERC Orders. Moreover, the injury is redressable by a favorable judicial decision. *See, e.g., City of Oberlin v. FERC,* 937 F.3d 599, 603 - 04 (D.C. Cir. 2019). A favorable decision will allow FERC to proceed with the relicensing proceeding and the possible issuance of new licenses for the three operating developments of the Project.

# IV.   ARGUMENT

## A.    Section 401(A)(1) Is Clear And Unequivocal.

"If the State, interstate agency, or Administrator, as the case may be, fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application."  33 U.S. Code § 1341(a)(1).

Both the amici and Vermont attempt to incorporate extraneous factors like delay or environmental considerations into analysis of the waiver issues.[6] *See, e.g., Vermont Br. 24 - 25, AWA Br. 25 - 30.* But the sole focus of Section 401(1)(a) is the conduct of the certification agency; whether,  Vermont acted on the application within a reasonable period.   The EPA has codified the common understanding of what constitutes "to act." As noted by the Commission in *Tower Kleber Limited Partnership*:

> The Environmental Protection Agency (EPA) has primary responsibility for carrying out the CWA and therefore is given deference in interpreting that statute.   EPA has established that a certifying authority may act on a request

---

[6] In doing so, they also incorrectly state that waiver would be adverse to the environment and protection of water quality, etc. Amici Br. 25 - 30, Vermont Br. 24 - 25.  These arguments ignore, that a waiver would still require the Commission to consider the 2016 401's conditions as recommendations and the Commission must still determine appropriate conditions for mitigation, protection and enhancement of the environment, including water quality, habitat, recreation, etc., when issuing a license *See Turlock,*  34 F.4th 1182.

for certification in one of four ways: granting certification, granting certification with conditions, denying certification, or expressly waiving certification.

186 FERC ¶ 61,149, P 19 (footnotes. omitted). *See also, Turlock Irrigation Dist. v. FERC* 35 F4th 1179 (D.C. Cir. 2022), Br. 36. As noted in *Tower Kebler*, only a certifying agency may take appropriate action upon an application in one of four ways: by granting certification, granting certification with conditions, denying certification, or expressly waiving certification within a reasonable period of time not to exceed one year. 186 FERC ¶ 61,149, P 19. A denial of certification can occur with or without prejudice.[7]

The failure of the certifying agency to adhere to the clear and unambiguous language of the statute results in waiver. Whether the waiver is characterized as automatic or not does not alter the statute's language and force. *Cf.* Vermont Br. 19 - 26 (argument regarding Morrisville's position that a waiver is automatic if a certifying agency does not act).

---

[7] In *Turlock Irrigation District, et al. v. FERC,* 36 F.4th 1179 (D.C. Cir. 2022)*,* the Court agreed with FERC that when a state repeatedly denies certification "without prejudice" year after year, it has not failed or refused "to act" within the meaning of the statute. The reason being that FERC still retains control over the licensing process. *See* Br, at. 7. In contrast, withdraw and resubmit schemes, whether unilateral or not, effectively deny FERC any opportunity to manage  the relicense process. Br. at. 42 – 43.

The language of the statute controls and its force and effect is not altered by actions other than a certifying agency "granting certification, granting certification with conditions, denying certification, or expressly waiving certification. The consideration of any other actions, particularly those of an applicant acting unilaterally or not, "would flout Congress's intent to limit the time that a state can delay a federal licensing proceeding without making a decision on a certification request because there would be no deadline for when a final certification must be issued." *See Tower Kleber,* 186 FERC at P 21.

Arguments that would require FERC to find that Vermont had been dilatory in order to find waiver are of no avail because the statutory language controls and that language only speaks to a failure to act by the certifying agency. *See, e.g.* Vermont Br. 26. Similarly, arguments that the public interest in the environment, claims of adverse impacts to recreational resources, etc.,[8] should waiver be found, delays in issuing a certificate, etc., are of no avail. *See, e.g.,* AWA Br. 13, 24 - 40.

---

[8] The AWA brief is an emotional plea to ignore the clear and unambiguous language of the statute. It is tantamount to imposing a requirement that waiver can only be deemed to have occurred in the absence of unsupported allegations of environmental harm, whether actual or not and, in this case, whether supported in the record before the Court.

The lack of substantial evidence in the record is best exemplified by AWA's footnote 4 at AWA Br. 12 that documents its efforts to have the Commission entertain many of the same unsubstantiated claims; ***claims still pending before the Commission.***

**B.      Modification Of The Statute By The Abuse Of "Unilateral Action."**

The gravamen of the Commission's position, as well as those of Vermont and amici, is that Morrisville acting unilaterally for its own benefit started a new "reasonable period," *i.e.*, a reset of the one-year clock. FERC Br. 41 - 47, Amici Br. 18 -21, and Vermont Br. 31. This argument, is contrary to and abuses Section 401(a)(1).

In relying upon its determination that Morrisville acted unilaterally, the Commission concluded that Vermont did not coordinate or otherwise agree with Morrisville in a manner designed to subvert the timeliness requirement (no more than one year) of section 401(1)(a) of Clean Water Act. The Commission thus found that Vermont had not waived its Clean Water Act authority." FERC Br. 22.

**C.      Acceding To A Scheme Is An Agreement Not To Act.**

The Commission argues that:

> In the Challenged Orders here, the Commission reasonably determined that Vermont, ***by acceding to Morrisville's unilateral requests to withdraw and resubmit its certification applications***, did not waive its Clean Water Act certification authority.

(emphasis added) FERC Br. 28 – 29.

Morrisville cannot reconcile the Commission's determination that Morrisville acted unilaterally with that *the certification agency only acceded* to the scheme of

withdrawing and resubmitting an application, even if done only once. FERC Br. 12; 34 – 38 (Vermont permitted applicant to withdraw and resubmit application for certification).

Acceding to a request constitutes coordinated activity. Synonyms for acceding range from the strongest: accord, agreeing, understanding, etc., to the weakest: ratifying, endorsing and granting. Morrisville understands the predicament of having to describe the actions of Vermont as "acceding" to a scheme. After all, FERC cannot just say that Vermont did nothing during any one of several reasonable periods of time. The same is true for simply permitting a "withdraw and resubmit" scheme to be implemented and then continue to process the application. Permitting is authorization. It is consent to the scheme to avoid the one-year time period.

## D. There Is No Unilateral Action In The Processing Of A Certificate Application.

The Commission argues that the withdraw and resubmit scheme was a unilateral action taken solely by Morrisville. FERC Br. 41- 48. This mischaracterizes a certification proceeding, which entails the filing of an application and requests for and submission of additional information as part of the state proceeding and/or the incorporation and consideration of similar submissions made in the federal licensing proceeding, *i.e..,* issuance of environmental assessments by FERC. Certification proceedings, like licensing proceedings are not static; they evolve over time. An

application is filed, reviewed, requests for submissions of additional information additional studies ensued, discussions, negotiations, etc., are all part of the process for an application's processing.

For example, Vermont in an email dated December 23, 2015 submits its own study for Morrisville's consideration after the second "reset" of September 9, 2015:

> Please find the Littoral Habitat Assessment for the Green River Reservoir attached. It has been revised and updated based on our discussions of the draft report that was previously circulated, as well as the Agency's December 18, 2015 memorandum.

JA __, R. 243 (attachment 23).

Another example is provided by an email sent two days after the second reset dated September 11, 2015 from Vermont to Morrisville:

> As part of the withdrawal and reapplication of Morrisville's application for a 401 water quality certification, the Agency indicated that it would be advantageous to also schedule a series of technical meetings to discuss the Agency's Green River recommendations that were shared with Morrisville on June 9 and the Green River Reservoir Littoral habitat study. Below are proposed dates for the three meetings with the first being in October. Please let me know as soon as possible which dates work for Morrisville.
>
> First Meeting: October 5 (afternoon), October 6 (morning or afternoon) or October 7 (morning or afternoon)
>
> Second Meeting: November 2 (afternoon), November 4 (morning or

afternoon) or November 5 (morning or afternoon)

Third Meeting: November 23 (afternoon), November 25 (morning or afternoon) or November 26 (morning or afternoon).

JA __, R. 243 (attachment 19).

FERC cannot argue that Vermont sat idly by and did nothing while Morrisville "all on its own" came up with the same withdraw and resubmit scheme in Vermont's 401 practice "playbook,"[9] and acting unilaterally for its own benefit implemented it twice. Br. 11, Vermont Br. 30.[10]  The action of a non-certifying agency, *i.e.,* the

---

[9]  Vermont's 2014 *Water Quality Certification Practice.* Copy provided in addendum.

[10] Vermont in its argument asserts that its 2014 *Water Quality Certification Practice* manual (practice manual) is of no import because the manual is not law, regulation and is not in the record. Vermont Br. 30.  ANR's Water Quality Certification Practice (2014) manual were in effect during the 2014 and 2015 withdrawals and submissions and was available previously on ANR's website. The following link was provided by Vermont staff in an email dated February 16, 2023 in response from an inquiry made by Morrisville's counsel. https://dec.vermont.gov/sites/dec/files/wsm/rivers/docs/Section401_WQ_Cert_Practice.pdf

As noted in Vermont's February 16, 2023 email, the practice manual "has been effectively superseded by the language is Section 29A-206 of the 2022 Vermont Water Quality Standards  which lays out the review requirements and public notice process for 401 applications." A copy of the email is provided in the addendum. Addendum p. 11. The practice manual unequivocally provides a process for avoiding  inadvertent waiver (p.3), Addendum p. 5.

Vermont did not disclose the practice manual in its filings before the Commission in response to Morrisville's petition for a declaratory order.

The 2014 practice manual is still available on Vermont's web site at https://anr.vermont.gov/content/section-401-water-quality-certification-practices

*The 2014 practice manual is referenced in the 2016 WQC, Condition S.* JA __, R. 140.

applicant, is not encompassed within the statute, and the Commission's interpretation of section 401(1)(a) to include actions by an applicant is not entitled to any deference, and upon de novo review by the Court should be rejected.[11]

### E. Unilateral Action By An Applicant Is A Fallacy.

Morrisville respectfully submits that in a certification proceeding the concept that an applicant can act unilaterally on its own to implement a withdraw and resubmit scheme to gain more time and/or to avoid an adverse decision is a fallacy. Clearly, Morrisville was not acting unilaterally when it was threatened by Vermont's then Attorney General. Br. at 18, 33, 49, 53. Vermont Br. 31, JA ___. R. 236, JA. __, R. 247, July 2020 Perry Memorandum, Attachment to Morrisville Response, JA __, R. 236, and Rehearing Request, JA __, R. 247, (affidavits of Morrisville consultant concerning threats).

-----------------------

[11] Morrisville notes that in *Nevada Irrigation District*, 187 FERC ¶ 61,095, P 29 (2024) the Commission **now states** that its standard for finding waiver of CWA Section 401 authority is:

> Action within the one year deadline can take several forms: a grant of certification with or without conditions by the agency, denial of certification with or without prejudice by the agency, or ***the unilateral withdrawal and resubmission of the application by the applicant***. The Commission offers no explanation for the more expansive interpretation of Section 401(a)(1) in *Nevada Irrigation* compared to *Tower Kleber.*

The emails from Vermont to Morrisville provided as examples, *supra,* clearly show that the resets, particularly the second "reset," were for the mutual benefit of the certifying agency's processing of the certification application and document that the actions of the agency and applicant were coordinated before and subsequent to the second reset. The emails clearly document the expectation of the applicant and certifying agency that the applicant would withdraw and resubmit its application for a second time and that the agency: would not reject the withdrawal, would accept the resubmission and continue with the processing of the application. JA __, R. 243 (attachments 19 and 23).

Unilateral action is singular. It is action taken solo. For example, a scuba diver either dives with a buddy or not. When a person dives without a buddy, the diver is a solo diver. The same is true for a licensed pilot flying solo. A flight may only be logged as a solo flight when the pilot is the "sole occupant of the aircraft." 14 C.F.R. § 61.51(d). Vermont during the pendency of the certification application was Morrisville's buddy and co-pilot, especially during the moments involved in the 2014 and 2015 withdraws and resubmissions that Vermont accepted immediately upon receipt, and then immediately and unilaterally informed FERC twice of the Vermont's acceptances instead of the applicant informing FERC. JA __, R. 234 (attachments 12, 13, 17 and 18). *See* 18 CFR § 5.32(b)(2).

The fallacy of unilateral action is best understood by acknowledging that each

time Morrisville:

(1) Withdrew its application. Vermont did not object or reject the withdrawal;

(2) Resubmitted its application. Vermont did not object or reject the submission;

(3) Withdrew and resubmitted its application. Vermont not only accepted the application and continued to process it, but also took it upon itself to inform FERC of the application's withdrawal and resubmittal; an action that FERC's regulations require of the applicant. 18 CFR § 5.32(b)(2);

(4) Withdrew and resubmitted its application. Vermont did not dismiss or deny it with or without prejudice for want of additional information or the pendency of an imminent one-year deadline;

(5) Withdrew and resubmitted its application. Vermont did not dismiss or deny it with or without prejudice; thus, FERC was denied the opportunity to evaluate the relicensing proceeding and decide whether the license applicant should be afforded the opportunity continue the relicensing   process by filing a new application for certification; and,

(6) Consider also that Vermont only received one (2014) FERC Hydro application form JA __, R. 57, noticed only one application, issued only one  draft 401 certificate (2016), and held only one hearing (2016). JA __, R. 140.

If Morrisville wanted to delay the certification proceeding to its benefit, it simply could have withdrawn the application and waited.  Why did it resubmit its application simultaneously with each withdrawal? Because both Morrisville and Vermont needed more time to conduct studies, review them, make and review

proposals, etc., *and to do so they need to circumvent the one-year rule.*

If delay was to its sole benefit, Morrisville would have waited until after a draft certificate had been issued by Vermont and then just withdrawn its application and wait, negotiate with Vermont, file a new certification application and/or a settlement agreement with FERC. *See, e.g., Central Vermont Public Service Corporation*, 113 FERC ¶61,167, P 4 – 9.

Why did Morrisville not wait and take additional time before refiling? Because the simultaneous withdrawal and resubmission of the application was coordinated with Vermont to reset the one-year rule. Thus, Vermont stood ready and willing to accept the letters withdrawing and resubmitting the "applications" on the same day, and then notify FERC of the occurrences on the same day. JA C.I. 97 and JA CI 116.[12]  Clearly, Morrisville's actions were not unilateral.

### F.    Considerations Of *Hoopa Valley,* Issuance Of The 2016 Water Quality Certificate, And Delay

Morrisville's reliance upon the plain and unequivocal language of Section 401(a)(1) does not undermine or ignore the Court's *Hoopa Valley Tribe* decision

---

[12] For convenience, the November 7, 2014 and the September 9, 2015 Morrisville letters to Vermont withdrawing and resubmitting the application are provided in the addendum.  The Vermont November 7, 2014 and September 15, 2015 letters to Morrisville accepting the withdraw and resubmission of the application, and filed with FERC by Vermont are provided also in the addendum. JA __, R. 234 (attachments 12, 13,  17 and 18). Addendum pp. 11 – 20.

913 F.3rd 1099 (D.C. 2019). It just recognizes the salient fact that certifying agencies, especially Vermont, are not likely to be transparent and negotiate explicit agreements, settlements, etc., that require a withdraw and resubmit scheme, as was done in *Central Vermont Public Service*. Vermont may only "suggest' that a deadline be circumvented, *i.e.,* avoided, or that adverse determination could be avoided by engaging in a withdraw and resubmit scheme as set forth in Vermont's practice manual; and/or scrupulously avoid leaving a paper trail of letters and emails. These less than transparent actions by Vermont does not mean that the scheme's implementation was not acceded to (agreed) and/or "coordinated.

Morrisville respectfully submits that Vermont took no action on the application within a reasonable period of time because it relied upon the withdraw and resubmit scheme to reset the one-year clock. Such reliance by an agency, or applicant, in the absence of an understanding of the ensuing actions would be naïve. Especially by an agency, like Vermont, which had already incurred an inadvertent waiver, as had occurred in *Central Vermont Public Service*,[13] and had enshrined the practice in its Practice Manual's explicit instruction on how to avoid inadvertent waiver. Br. 11, and Addendum.[14]  By focusing on the agency's failure to act, the

---

[13] 186 FERC PP 9, 15 – 16.
[14] "Department may suggest to the applicant that it withdraw and resubmit its application, thereby restarting the clock,"  Practice Manual at  p. 3. *See* Addendum at 5.

public interest in the timely processing of certificate and license applications is promoted by not requiring licensing agencies such as the Commission, and ultimately the Courts, delve into motives, actions, etc., of an applicant. All of which is subjective and/or imprecise at best.

Arguments that Morrisville has benefitted by delays are unsupported and illusory. Such arguments ignore that Morrisville is not an independent power producer that operates for profit. Morrisville is a municipal utility that operates for the benefit of its ratepayers and community. As such, it must engage in long term planning to meet ever-escalating demands for electricity, and especially electricity from renewables such as its hydro plants. Delay is counterproductive and costly to a municipal utility/applicant.  In this instance delays in the relicensing process put at risk the ability of Morrisville to undertake plant improvements, *e.g.*, efficiency upgrades to turbines, control systems, etc., and other upgrades and life extension services  under a new license to ensure reliable service.

Some respondents have asserted that Morrisville waited too long in seeking a waiver determination. They assert, specifically, that the petition for a declaratory order was pursued several years after issuance of the 2016 WQC. Vermont Br. 1 and 25, Amici Br. 10 - 11. Morrisville responds, to the extent that such arguments emanate from the basis of an equity defense of "unclean hands," the arguments are inapplicable. A waiver determination is made by the Commission and involves a

federal question, not the imposition of an equitable remedy, *e.g.,* injunctions, stays, etc. A waiver determination can be requested at any time, and/or initiated by the Commission *sui juris*.

In *Tower Kebler.* The Section 401 WQC was issued on October 15, 2021, the Commission declared waiver on February 27, 2024 and held that "[o]nce a state agency has waived its authority to act on a water quality certification application, the water quality conditions are not mandatory and acceptance of the conditions is a matter within the federal agency's discretion. *Tower Kleber*, 186 FERC ¶ 61,149, P 25 (2024), *citing Cent. Vt. Pub. Serv. Corp.,* 113 FERC ¶ 61,167, at P 20 (2005). *See also Millennium Pipeline Co. v. Seggos*, 860 F.3d 696, 700-701 (D.C. Cir. 2017) holding that once a waiver has occurred "there is nothing left for the agency to do, and the agency's decision to grant or deny would have no legal significance." 186 FERC P 24, fn. 57.

### G.  The Public Interest Is Best Served By Transparent Agency Action

On July 5, 2024 the Court issued its decision in *Brookfield White Pine Hydro LLC,  v. FERC and American Whitewater, et al.,* __ F4th _, 2024 U.S. App. LEXIS 16475 (D.C. Cir. 2024.)[15]  On May 27, 2024, the Commission issued its final order in *Nevada Irrigation District*, 187 FERC ¶ 61,095 (2024). These decisions support

---

[15] Vermont intervened in this proceeding.

the position that the public interest is best served by a certification agency taking explicit and transparent action on an certification application.

In *White Pine Hydro*, the applicant made several last minute submissions, new information proposing mitigation measures, etc., within three weeks Maine denied the application without prejudice on the ground that it lacked sufficient information to determine whether the application would comply with relevant state environmental regulations. The applicant filed a petition for a waiver determination. The Commission denied the determination and the Court upheld the Commission. The action of Maine was transparent and in the public interest, which was benefited by FERC or the Court *not* having to weigh into the motives of the applicant or the certifying agency had the applicant withdrawn and resubmitted its application unilaterally or not. Denial without prejudice imposes a bright-line for analysis of whether the denial was warranted under the EPA's current regulations. *See* 40 C.F.R. § 121.7(e)(1).

In *Nevada Irrigation*, the Commission added to its interpretation of what actions constituted and act on an application under section 401(a)(1) and held that actions by an applicant could constitute "action within one year." Specifically, the Commission equates an agency's denial without prejudice with an applicant's "unilateral withdrawal and resubmission." 187 FERC P 29. Such an interpretation blurs the bright line established in *N.Y. Dep't of Env't Conservation*, 884 F.3d at

456. Equating unilateral action by an applicant to denial without prejudice by a certifying agency is not transparent and is not in the public interest in the processing applications for certification and licensing without undue delay. Such blurring of thee bright-line is not in the public interest.

## V.    CONCLUSION

For the reasons articulated above, Morrisville unequivocally satisfies the requirements for standing under Article III of the Constitution, demonstrating a concrete, particularized, and imminent injury directly attributable to the Federal Energy Regulatory Commission's (FERC) Challenge Orders. Vermont's assertions that Morrisville lacks standing are fundamentally flawed, as they misrepresent the true source and nature of the injury, which arises from FERC's directive rather than any alleged delays in the issuance of the 2016 Water Quality Certificate (WQC).

Section 401(a)(1) of the Clean Water Act provides clear and unambiguous guidance that mandates a waiver of Vermont's certification authority when a certifying agency fails to act within the stipulated one-year period. Vermont's attempts to introduce extraneous factors, such as delays or environmental considerations, into the analysis of the waiver issue are without merit and diverge from the statute's explicit focus on the certifying agency's actions. The Environmental Protection Agency's (EPA) established interpretations reinforce that

only specific actions: granting certification, granting it with conditions, denying it, or expressly waiving it— that constitute valid responses by a certifying agency (not an applicant) under Section 401(a)(1). Any deviation, including applicant-driven schemes to withdraw and resubmit applications, does not alter the statutory mandate and constitutes an abuse of the provision.

Moreover, the Commission's characterization of Morrisville's actions as unilateral fails to acknowledge the coordinated efforts with Vermont, which actively facilitated the withdrawal and resubmission of applications. This mischaracterization undermines the integrity of the statutory framework and disregards the collaborative nature of the actions taken, thereby invalidating Vermont's arguments against standing. The precedent set by cases such as *Sierra Club v. United States Department of Energy* and *Twin Rivers Paper Co. v. SEC* further supports the recognition of Morrisville's standing based on the clear and self-evident nature of the injury sustained.

In addition, recent judicial decisions, including *Brookfield White Pine Hydro LLC v. FERC* and *Nevada Irrigation District*, underscore the necessity for transparent and explicit agency actions in certification proceedings. These rulings affirm that certification agencies must adhere strictly to procedural standards without allowing applicant-driven maneuvers to circumvent statutory deadlines. By

upholding these principles, the Court will ensure that the public interest is served through timely and accountable decision-making processes, which are essential for the effective operation and relicensing of municipal utilities like Morrisville.

A favorable ruling for Morrisville will not only redress the immediate financial and operational harms imposed by FERC's Orders but also reinforce the importance of statutory clarity and agency accountability. Waiving Vermont's Section 401 authority as mandated by Section 401(a)(1) will eliminate the undue burdens of costly engineering studies and dam refurbishments, thereby preserving the Project's viability for the benefit of Morrisville's citizens and ratepayers.

Accordingly, the Court should affirm Morrisville's standing, reject Vermont's unfounded objections, and grant the relief sought by recognizing the waiver of Vermont's Section 401 authority. This decision will mitigate the substantial harms inflicted by FERC's Orders and uphold the integrity of the Clean Water Act's certification process.

Dated September 25, 2024

Respectfully submitted,


/s/ Paul V. Nolan
Paul V. Nolan
5515 17th Street North
Arlington, Virginia 22205-2722
pvnpvndiver@gmail.com
703-587-5896

Carolyn Elefant
LAW OFFICES OF CAROLYN ELEFANT
1440 G Street N.W., Eighth Floor
Washington D.C. 20005
202-297-6100
carolyn@carolynelefant.com

**CERTIFICATE OF COMPLIANCE**

1.      This document complies with this Court's type-volume limitation because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1), this document contains 5,955 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 point Times New Roman.

DATED: September 25, 2024        Respectfully submitted,

/s/ Paul V. Nolan
Paul V. Nolan, Esq.
5515 North 17th Street
Arlington, VA 22205-2722
703-534-5509
pvnpvndiver@gmail.com

## CERTIFICATE OF SERVICE

I certify that on September 25, 2024 I caused to be served a copy of the Reply

Brief of Petitioner, Village of Morrisville, Vermont, on Robert Solomon, Solicitor

for the Federal Energy Regulatory Commission, 888 First Street, N.E. Washington

D.C. 20426, and all of the parties on the official FERC service list via email.


DATED:          September 25, 2024

Respectfully submitted,


/s/ Paul V. Nolan
Paul V. Nolan
5515 North 17th Street
Arlington, VA 22205-2722
703-534-5509
pvnpvndiver@gmail.com

# ADDENDUM

# TO

# REPLY BRIEF

# TABLE OF CONTENTS

Vermont's 2014 *Water Quality Certification Practice*  ADD1

February 16, 2023 Vermont email to Morrisville counsel
Providing link to 2014 practice manual  ADD9

November 7, 2014 and the September 9, 2015 Morrisville letters
 to Vermont withdrawing and resubmitting the application  ADD11

The Vermont November 7, 2014 and September 15, 2015 letters
to Morrisville accepting the withdraw and resubmission of the
application, and filed with FERC  ADD14

**Vermont Agency of Natural Resources**
**Department of Environmental Conservation**

**Section 401 Water Quality Certification Practice**

## I. Purpose

Effective October 22, 2014, this Practice supersedes the "Section 401 Water Quality Certification Procedure" dated April 2, 2012.

It is the goal of this Practice to ensure a consistent application review and internal Agency of Natural Resources (Agency) coordination process with respect to Clean Water Act Section 401 water quality certification (WQC) decisions. The public notice and public hearing requirements relating to WQCs are contained in Section 13.11 of the Department's Vermont Water Pollution Control Permit Regulations dated February 26, 1974 (VWPCPR).

## II. Pre-Application Scoping Meeting with Project Proponent

The Department of Environmental Conservation (Department) strongly encourages that each applicant for a WQC attend a pre-application scoping meeting with representatives from the Agency's Departments. The Watershed Management Division's 401 Program Coordinator (401 Program Coordinator or Coordinator) will be responsible for working with applicants to schedule pre-application meetings. The Coordinator will also coordinate with division and department management to ensure that appropriate staff are included in such meetings.

## III. Application

(a) Section 13.11(b) of the VWPCPR states that a Section 401 WQC application shall contain sufficient information including "such additional information deemed necessary" to evaluate the application. The following subsections provide guidance on what the Department may require from a 401 WQC applicant.

(b) **Section 401 WQC Associated with a Federally-Issued General Permit.** In certain cases a federal agency may issue a general permit for which the Agency may grant general certification or waiver for certain categories of discharges or activities.

(c) **Application for Individual 401 Certifications not in Connection with a FERC License or Exemption.** An applicant for a federal license or permit will file a request for a WQC on a form provided by the Department, which is available at the Department's central offices in Montpelier or on the 401 Water Quality Certification website: dec.vermont.gov/watershed/business-support/water-quality-certification-section-401.

(d) (1) **Application for Certification in Connection with a FERC License or Exemption.** An applicant for a FERC license or exemption will file a request for a WQC on a form provided by the Department, which is available at the Department's central offices in Montpelier or on the Flow Protection - Hydroelectric Power website: dec.vermont.gov/watershed/rivers/streamflow-protection/hydroelectric. In addition to information on the application form, the project proponent will provide additional supporting information as follows:

(A) **FERC licensed projects using the Traditional Licensing Process (TLP):** license application and responses to any FERC additional information requests.

(B) **FERC licensed projects using the Integrated Licensing Process (ILP):** license application.

(C) **FERC exempt projects:** exemption application and the results of any environmental studies completed as part of the FERC process.

(2) For WQCs requested in connection with a FERC license or exemption, the timing of the application should be coordinated with the applicable FERC process.

(A) **FERC licensed projects using the TLP.** Applicants that are using the TLP (18 CFR § 4.30 *et seq.*) may file a certification application following issuance of a Notice of Ready for Environmental Analysis (Notice indicates that FERC is ready to prepare the NEPA document) by FERC.

(B) **FERC licensed projects using the ILP.** Applicants that are using the ILP (18 CFR § 5.1 *et seq.*) may file a certification application as early as the date the FERC license application is filed.

(C) **FERC exempt projects.** Applicants may only file a certification application after results from all studies necessary to support the application are available and a complete project proposal has been developed.

(e) **Additional Materials Required.** Prior to making a decision on an application for a WQC, the Department may require that the applicant:

(1) perform various studies or environmental quality tests including chemical analyses of water, sediment, or fill material; biological assessments; and assessments of habitat suitability;

(2) pursuant to 3 V.S.A. § 2809, pay the cost of research, scientific, programmatic, or engineering expertise or services that the Department does not have when such expertise or services are required for the processing of the WQC application; and

(3) submit additional information necessary to make its anti-degradation findings pursuant to Vermont's Anti-Degradation Policy and any anti-degradation procedure or rule in effect at the time of application.

## IV. Determination of Administratively Complete Application

(a) **In General.** Within two weeks of receipt of an application, the Department will review the application and determine whether it is administratively complete. An "administratively complete application" is an application that has been determined to include all of the initially required documentation necessary to begin a technical review

of the application. These documents include the correct completed application form(s) and supporting information, signatures, and fees.

    (1) If an application is administratively complete, the Department will issue a letter to the applicant indicating the date of receipt of the application and its administrative completeness.

    (2) If an application is not administratively complete, the Department will contact the applicant via phone, email, or letter, and inform the applicant of the materials needed to make the application administratively complete. If the requested information is not provided within the timeframe provided by the Department, the application may be denied without prejudice and the applicant may reapply at any time. The notice of denial will be provided via email or letter.

(b) **Coordination with Federal Agency; Decision Time Clock.**

    (1) Section 401 of the federal Clean Water Act provides that a state must act on a request for certification within a "reasonable period of time," which cannot exceed one year after receipt of the request, or the certification requirement shall be waived. Different federal agencies have defined in regulation what constitutes a "reasonable period of time" for state decision-making. However, federal regulation also gives flexibility to federal agencies to either shorten or lengthen the period of time for states' decision-making.

    (2) To avoid an inadvertent waiver of a WQC, the 401 Program Coordinator will contact the involved federal agency upon receipt of a WQC application to determine the federal agency's timeframe for noticing and issuing its federal license or permit. The 401 Program Coordinator will document this timeline in writing. If more time is needed to make a decision, the 401 Program Coordinator will request an extension and confirm in writing. If the federal agency will not grant additional time, the Department may suggest to the applicant that it withdraw and resubmit its application, thereby restarting the clock, or the Department may deny the certification without prejudice if there is insufficient information to make a final decision and encourage the applicant to resubmit the application.

## V. Determination of Technically Complete Application

(a) **In General.** For purposes of this Procedure a "technically complete application" means an application that contains a material record sufficient to support the creation of a draft decision for public notice purposes.

(b) **Internal Agency Coordination in Determination on Technical Completeness.**

    (1) The Watershed Management Division (WSMD) Director will designate a lead WSMD program manager or staff person for an application who, in coordination with the 401 Coordinator, will ensure coordination in evaluating the technical completeness of the application and take the lead in writing the draft WQC decision.

(2) The 401 Program Coordinator, in coordination with the lead WSMD manager/staff, will ensure coordination with other affected Agency divisions and departments as follows. Affected Agency divisions and departments may include the Department of Environmental Conservation (DEC); DEC's Watershed Management Division (WSMD); the following programs within WSMD: the Lakes and Ponds Management and Protection Program, the Monitoring Assessment and Planning Program, the Rivers Program, the Stormwater Program, the Wastewater Program, and the Wetlands Program; and the Vermont Fish and Wildlife Department.

(A) Upon determining that an application is administratively complete, the 401 Program Coordinator will promptly provide written notification via email to all WSMD program managers, the WSMD Director and Deputy, and other affected Agency divisions and departments with a copy of the application.

(B) The 401 Program Coordinator will schedule a meeting to discuss the project and application and discuss assigned roles for evaluating the application and drafting a tentative decision.

(C) The 401 Program Coordinator will develop a single email address list for all Agency managers and staff involved in the review and processing of the application. All involved staff and managers will use this email address throughout the application review and decision-making process to ensure internal coordination.

(D) The 401 Program Coordinator, in consultation with the lead WSMD manager/staff, will provide a date by which other affected divisions and departments must respond to the Coordinator as to whether the application is technically complete for their purposes and identify any additional information that is needed.

(E) If the 401 Program Coordinator determines that other Agency divisions and departments are not able to meet the specified deadline for response, the Coordinator will notify the WSMD Director/Deputy. The Director/Deputy will work with the Coordinator, the Department Commissioner, and others as necessary to promptly resolve any timing issues. Any disagreement among or between Agency divisions and departments should be identified early and brought to the Secretary if it cannot be promptly resolved.

(F) Once an application is deemed technically complete, the 401 Program Coordinator will notify the applicant in writing. If an application is deemed technically incomplete, the 401 Program Coordinator will notify the applicant in writing with sufficient detail to identify the information or materials necessary to complete the application.

4

(G) If an application is technically incomplete, at the Department's sole discretion, no further processing of the application will take place until the information requested is received and determined to be technically complete. If the requested information is not provided within the timeframe provided by the Department, the application may be denied without prejudice and the applicant may reapply at any time. The Department will provide the notice of denial in writing.

(H) The Department may at any time require an applicant to submit any additional information that it considers necessary to make a determination that an application is technically complete. The application may be denied without prejudice if any requested information is not provided within the timeframe provided by the Department.

(c) **Special Provisions for Applications for Certification in Connection with a FERC License or Exemption.**

(1) The Department will process certain applications in connection with a FERC license or exemption within 120 days after a determination that an application is technically complete and Agency staff has had an opportunity to conduct a site visit at an appropriate time of year and during appropriate flow conditions. Projects qualifying for an expedited process are:

(A) Run-of-river projects at existing dams (no change to extent of impoundment) for which the proposal provides bypass flows consistent with the default hydrologic standards (Vermont Water Quality Standards, Section 3-0l(C)), and the proposal does not impact existing or designated uses or water quality criteria;

(B) Run-of-river projects at existing dams (no change to extent of impoundment) with short bypasses having the following characteristics:

(i) very low habitat value (e.g., very steep with prominent ledges), or

(ii) consisting solely of one or more pools with minimal flow needs to provide for movement of fish and to maintain water quality and aquatic habitat, and

(iii) the project site does not have aesthetic or recreational values (e.g., for some waterfalls) or provide habitat for threatened or endangered species;

(C) Conduit projects which are physically removed from state and federal waters and have no impact on water quality;

(D) Projects for which a 5 MW exemption application has been filed and accepted by FERC.

## VI.  Scope of Review for Application Decisions

Pursuant to Section 13.11(g)(3) of the VWPCPR, a WQC must contain "a statement that there is a reasonable assurance that the activity will be conducted in a manner that will not violate applicable water quality standards.  In making such determination, the Department will evaluate whether an activity complies with applicable state laws and Agency permits, rules, procedures, practices, and policies that ensure compliance with the VWQS.

## VII.  Coordination in Formation of Tentative Determination on WQC Application.

Prior to issuing a draft WQC determination for public comment, the 401 Program Coordinator will ensure appropriate coordination with other affected Agency divisions and departments as follows:

> (1) Prior to issuing a draft tentative determination for public notice, a draft will be provided to other affected Agency divisions and departments with a specified period of time to participate in drafting and providing comments.

> (2) The 401 Program Coordinator and lead WSMD program manager/staff will ensure that comments of other Agency divisions and departments are considered prior to the issuance of a tentative determination for public comment and will coordinate internal meetings and discussions as needed.  In the case of any conflicts or disagreements among or between divisions and departments, the WSMD Director/Deputy will work with the lead Division program manager, the Commissioner, and others as necessary to promptly resolve any disagreements.  Any disagreement among or between Agency divisions or departments should be identified early and brought to the Secretary if they cannot be promptly resolved at the department level.

> (3) If the 401 Program Coordinator determines that other Agency divisions or departments are not able to meet the specified deadline for comment, the WSMD Director/Deputy and lead WSMD program manager will work with the Commissioner and others to resolve any timing issues.  Any disagreement among or between Agency divisions and departments should be identified early and brought to the Secretary if they cannot be promptly resolved at the department level.

## VIII.  Content of Certification Decision

(a) Section 13.11(g) of the VWPCPR states the information that the Department must include in a WQC and grants the Department the authority to include such other information as the Department may determine appropriate and any conditions the Department deems necessary.  Pursuant to 13.11(g) a WQC must contain:

(1) The name and address of the applicant;

(2) A statement of the record upon which the decision is based;

(3) A statement that the Secretary has examined:

(A) the application made by the applicant to the Secretary for certification;

(B) the application made to the federal licensing or permitting agency (specifically identifying the number or code affixed to such application) and bases his or her decision upon an evaluation of the information contained in such application which is relevant to water quality considerations; and

(C) any other information furnished by the applicant sufficient to permit the Secretary to issue a WQC;

(4) A statement that there is a reasonable assurance that the activity will be conducted in a manner which will not violate the Vermont Water Quality Standards and other appropriate requirements of state law and will be in compliance with Sections 301, 302, 303, 306, and 307 of the federal Clean Water Act, 33 U.S.C. § 1251 *et seq.*, as amended;

(5) A statement of any conditions which the Secretary deems necessary or desirable with respect to discharge or activity;

(6) A condition vesting the Secretary with the authority to reopen and alter or amend the certification conditions over the life of the project when such action is necessary to assure compliance with the Vermont Water Quality Standards and other appropriate requirements of state law;

(7) A condition stating that authorized representatives from the Agency, at reasonable times and upon presentation of credentials, may enter upon the site where the activity is taking place for purposes of inspecting and determining compliance with certification conditions;

(8) The following statement concerning the effective date and expiration of the certification. The Certification will become effective on the date of issuance, and the conditions of the Certification will become conditions of the federal license or permit (33 U.S.C. § 1341(d)). If the federal authority denies a license or permit, the Certification becomes null and void. Otherwise, it runs for the term of the federal license or permit.

(9) The following statement concerning enforcement of the certification. This Certification is only valid for those activities that fully comply with the terms and conditions of the federal license of permit and this Certification. The Agency reserves the authority to enforce any violation of the VWQS that results from any activity or discharge and to enforce all other state laws applicable to such activities and discharges.

(10) Appeals language.

(A) For renewable energy projects:  If this decision relates to a renewable energy plant for which a certificate of public good is required under 30 V.S.A. § 248, any appeal of this decision must be filed with the Vermont Public Service Board pursuant to 10 V.S.A. § 8506.  This section does not apply to a facility that is subject to 10 V.S.A. § 1004 (dams before the Federal Energy Regulatory Commission), 10 V.S.A. § 1006 (certification of hydroelectric projects) or 10 V.S.A. Chapter 43 (dams).  Any appeal under this section must be filed with the Clerk of the Public Service Board within 30 days of the date of this decision; the appellant must file with the Clerk an original and six copies of its appeal.  The appellant will provide notice of the filing of an appeal in accordance with 10 V.S.A. § 8504(c)(2), and will also serve a copy of the Notice of Appeal on the Vermont Department of Public Service.  For further information, see the Rules and General Orders of the Public Service Board, available on line at www.psb.vermont.gov.  The address for the Public Service Board is 112 State Street, Montpelier, Vermont, 05620-2701 (Tel. # 802-828-2358).

(B) For all other projects:  Pursuant to 10 V.S.A. Chapter 220, any appeal of this decision must be filed with the clerk of the Environmental Division of the Superior Court within 30 days of the date of the decision.  The Notice of Appeal must specify the parties taking the appeal and the statutory provision under which each party claims party status; must designate the act or decision appealed from; must name the Environmental Division; and must be signed by the appellant or the appellant's attorney.  In addition, the appeal must give the address or location and description of the property, project, or facility with which the appeal is concerned and the name of the applicant or any permit involved in the appeal.  The appellant must also serve a copy of the Notice of Appeal in accordance with Rule 5(b)(4)(B) of the Vermont Rules for Environmental Court Proceedings.  For further information, see the Vermont Rules for Environmental Court Proceedings, available on line at www.vermontjudiciary.org.  The address for the Environmental Division is:  32 Cherry St.; 2nd Floor, Suite 303; Burlington, VT 05401 (Tel. # 802-828-1660).

## IX. Public Notice and Comment; Public Hearing; Issuance of Decision

The Department will provide public notice of and opportunity for written comments regarding the proposed activity and the tentative determination to issue or deny certification.  The public notice will be issued in accordance with Section 13.11(c) of the VWPCPR.  The Department will also provide an opportunity for a public meeting in accordance with Sections 13.11(d), (e), and (f) of the VWPCPR.  After consideration of public comments, the Agency will make a final decision on the application.


## 2010 EPA and 2014 VANR Handbooks for WQC, etc.

**Crocker, Jeff** <Jeff.Crocker@vermont.gov>                    Thu, Feb 16, 2023 at 11:15 AM
To: Paul Nolan <pvnpvndiver@gmail.com>

Paul,

Below is a link to the VDEC  Section 401 Water Quality Certification Practice.

https://dec.vermont.gov/sites/dec/files/wsm/rivers/docs/Section401_WQ_Cert_Practice.pdf

Please not that it has been effectively superseded by the language is Section 29A-206 of the 2022 Vermont Water Quality Standards which lays out the review requirements and public notice process for 401 applications. Link to the 2022 Standards is below.

https://dec.vermont.gov/sites/dec/files/documents/2022-Vermont-Water-Quality-Standards.pdf

Jeff



**Jeff Crocker** | Supervising River Ecologist

Vermont Agency of Natural Resources

Department of Environmental Conservation

Watershed Management Division // Rivers Program

Davis 3, 1 National Life Dr | Montpelier, VT 05620-3522

802-490-6151 (cell)

https://dec.vermont.gov/watershed

*The Agency of Natural Resources supports telework, and there are times when I may be*

*Working from another office location. I am available to connect by phone and email. I am*

*also available to connect in-person upon request.*

**From:** Paul Nolan <pvnpvndiver@gmail.com>
**Sent:** Wednesday, February 8, 2023 3:38 PM

**EXTERNAL SENDER: Do not open attachments or click on links unless you recognize and trust the sender.**

[Quoted text hidden]

Village of Morrisville
# Water & Light Department
857 Elmore Street
Morrisville, Vermont  05661-8408
(802) 888-3348
Fax: (802) 888-5911
www.mwlvt.com

TRUSTEES
Edward DeBor, Chairman
Peter Bourne
Dana Wildes
Chris Audy
Wallace Reeve

MANAGER
Craig Myotte

November 7, 2014

Peter LaFlamme, Director
Watershed Management Division
VT Dept of Environmental Conservation National Life Drive, Main 2
Montpelier, VT 05620-3522

RE:    Morrisville Water & Light
       Hydroelectric Project, FERC No. 2629

Dear Mr. LaFlamme:

By electronic correspondence dated January 30, 2014, Morrisville Water & Light ("Morrisville") submitted an application, for a Section 401 water quality certification to the Vermont Agency of Natural Resources ("VTANR"). In support of its January 30, 2014, application, Morrisville referred to and incorporated its Federal Energy Regulatory Commission ("FERC") relicensing application for FERC project No. 2629. The VTANR acknowledged receipt of Morrisville's January 30th application by letter dated February 3, 2014.

33 U.S.C. § 1341 requires the VTANR to act on a request for Section 401 water quality certification within a reasonable period of time, which shall not exceed one year after receipt of the request,  or the certification requirements of § 1341 are waived. To accommodate VTANR review of Morrisville's various proposals, including its recently submitted phase-in proposal, and in consideration of other factors that have arisen in discussions with the VTANR over the course of the past year, Morrisville hereby withdraws its January 30, 2014, application and simultaneously reapplies for Section 401 water quality certification in the FERC relicense for project No 2629.

Please consider this letter, together with Morrisville's FERC relicensing application and all documents and information furnished to FERC and the VTANR since April 25, 2013, in support of Morrisville's initial application for Section 401 water quality

certification, as Morrisville's renewed application for Section 401 water quality certification.

Correspondence and inquiries on this application should be directed to me at the address set forth above. Please acknowledge receipt of this withdrawal and reapplication for § 401 certification.

Sincerely,

Craig T. Myotte

CC: Distributed Electronically

Kimberly D. Bose, FERC Secretary
Stephen Kartalia, FERC
Justin Johnson (VTANR)
Jon Groveman (VTANR)
Jeff Crocker (VTANR)
Shap Smith
Richard Westman
Elijah Emerson, Esq.
Meddie Perry
Village Trustees

# Document Info for Accession Number: 20141107-5170

## Details

**Document:** 11/07/2014

**Filed:** 11/07/2014

**Posted:** 11/07/2014 02:37:43 PM

**First Received Date:**

11/07/2014 02:16:40 PM

**Security Level:** Public

**Official:** Yes

**E-filing:** Yes

**Non-decisional:** No

**Category:** Submittal

**Library:** Hydro

**Aperture:** 0

**File Type:**

**Description\*\*\* :** Withdrawal/reapplication of Section 401 ceritication of Morrisville Hydroelectric Project under P-2629.
File List

| Docket | Sub-Docket | Type | Document Class | Document Type |
|--------|-----------|------|----------------|---------------|
| P-2629 | 000 | On Document | Applicant Correspondence | Withdrawal of Application |

| Correspondent | Last Name | First Name | MI | Role/Org |
|---------------|-----------|------------|-----|----------|
| AUTHOR | Crocker | J | x | Vermont Agency of Natural Resources |
| RECIPIENT | Bose | K | D | Office of the Secretary, FERC |

Version: 5.5.8.0
Release: 06/28/2024

For any issues regarding FERC Online, please contact ferconlinesupport@ferc.gov or call 866-208-3676. Please include a current mail address, telephone number, and email address.

ADD13



**Vermont Department of Environmental Conservation**                    *Agency of Natural Resources*

Watershed Management Division
1 National Life Drive, Main 2                                          [phone]   802.490.6151
Montpelier, VT 05620-3522                                             [fax]     802.338.4890
www.watershedmanagement.vt.gov

FILED AND DISTRIBUTED ELECTRONICALLY

November 7, 2014

Craig Myotte
Village of Morrisville Water & Light
857 Elmore Street
Morrisville, Vermont 05661

RE:        Morrisville Hydroelectric Project – FERC Project No. 2629
           Withdrawal and reapplication for Water Quality Certification

Dear Mr. Myotte:

The Agency of Natural Resources acknowledges receipt of the November 7, 2014 letter, that Morrisville Water and Light is withdrawing its application for a water quality certification for the Morrisville Hydroelectric Project and concurrently is reapplying for a certification. The letter was received by the Department on November 7, 2014.


Thank you for your cooperation.


Very truly yours,

Jeffrey B. Crocker
Streamflow Protection Coordinator

c:         Melissa Grader, USFWS
           Steve Kartalia, FERC
           Justin Johnson, VANR
           Jon Groveman, VANR
           Pete LaFlamme, VANR
           Rod Wentworth, VANR
           Eric Davis, VANR
           Meddie Perry, VHB
           Elijah Emerson, Esq.
           FERC Distribution List

*To preserve, enhance, restore, and conserve Vermont's natural resources, and protect human health, for the benefit of this and future generations.*

ADD14

Village of Morrisville

# Water & Light Department

857 Elmore Street
Morrisville, Vermont 05661-8408
(802) 888-3348
Fax: (802) 888-5911
www.mwlvt.com

TRUSTEES
Dana Wildes, Chairman
Peter Bourne
Ed DeBor
Chris Audy
Wallace Reeve

MANAGER
Craig Myotte

September 9, 2015

Peter LaFlamme, Director
Watershed Management Division
VT Dept of Environmental Conservation National Life Drive, Main 2
Montpelier, VT 05620-3522

RE:  Morrisville Water & Light Hydroelectric Project, FERC No. 2629
     Water Quality Certificate Withdrawal and Reapplication

Dear Mr. LaFlamme:

By electronic correspondence dated January 30, 2014, Morrisville Water & Light ("Morrisville") submitted an application, for a Section 401 water quality certification to the Vermont Agency of Natural Resources ("VTANR"). In support of its January 30, 2014, application, Morrisville referred to and incorporated its Federal Energy Regulatory Commission ("FERC") relicensing application for FERC project No. 2629. The VTANR acknowledged receipt of Morrisville's January 30th application by letter dated February 3, 2014.

By electronic correspondence dated November 7, 2014, Morrisville withdrew and simultaneously reapplied for a Section 401 water quality certification to the VTANR. On the same date, the VTANR acknowledged receipt of Morrisville's withdrawal and reapplication.

33 U.S.C. § 1341 requires the VTANR to act on a request for Section 401 water quality certification within a reasonable period of time, which shall not exceed one year after receipt of the request,  or the certification requirements of § 1341 are waived. To accommodate VTANR review of Morrisville's various proposals, including a phase-in proposal of bypass flows, and in consideration of other factors that have arisen in discussions with the VTANR over the course of the past year, Morrisville hereby withdraws its November 7, 2014, application and simultaneously reapplies for Section 401 water quality certification in the FERC relicense for project No 2629.

Please consider this letter, together with Morrisville's FERC relicensing application and all documents and information furnished to FERC and the VTANR since April 25, 2013, in support of Morrisville's initial application for Section 401 water quality certification, as Morrisville's renewed application for Section 401 water quality certification.

Correspondence and inquiries on this application should be directed to me at the address set forth above. Please acknowledge receipt of this withdrawal and reapplication for § 401 certification.

Sincerely,

Craig T. Myotte

Craig T. Myotte

CC: Distributed Electronically

Kimberly D. Bose, FERC Secretary
Stephen Kartalia, FERC
Trey Martin (VTANR)
Jeff Crocker (VTANR)
Shap Smith
Richard Westman
Elijah Emerson, Esq.
Meddie Perry
Village Trustees

# Document Info for Accession Number: 20150909-5175

## Details

**Document:** 09/09/2015

**Filed:** 09/09/2015

**Posted:** 09/09/2015 04:06:51 PM

**First Received Date:** 09/09/2015 04:01:37 PM

**Security Level:** Public

**Official:** Yes

**E-filing:** Yes

**Non-decisional:** No

**Category:** Submittal

**Library:** Hydro

**Aperture:** 0

**File Type:**

**Description*** :** Withdrawal and Re-application of the Section 401 Application from the Vermont Agency of Natural Resources under P-2629.
File List

| Docket | Sub-Docket | Type | Document Class | Document Type |
|--------|-----------|------|----------------|---------------|
| P-2629 | 014 | On Document | Applicant Correspondence | Withdrawal of Application |

| Correspondent | Last Name | First Name | MI | Role/Org |
|---------------|-----------|-----------|-----|----------|
| AUTHOR | Crocker | J | x | Vermont Agency of Natural Resources |
| RECIPIENT | Bose | K | D | Office of the Secretary, FERC |
| AGENT | Crocker | J | x | Vermont Agency of Natural Resources |

Version: 5.5.8.0
Release: 06/28/2024

For any issues regarding FERC Online, please contact ferconlinesupport@ferc.gov or call 866-208-3676.
Please include a current mail address, telephone number, and email address.

ADD17


VERMONT

**Vermont Department of Environmental Conservation**          *Agency of Natural Resources*

Watershed Management Division
1 National Life Drive, Main 2                                                    [phone]   802.490.6151
Montpelier, VT 05620-3522                                                      [fax]     802.828.1544
www.watershedmanagement.vt.gov

FILED AND DISTRIBUTED ELECTRONICALLY

September 9, 2015

Craig Myotte
Village of Morrisville Water & Light
857 Elmore Street
Morrisville, Vermont 05661

RE:        Morrisville Hydroelectric Project – FERC Project No. 2629
           Withdrawal and reapplication for Water Quality Certification

Dear Mr. Myotte:

The Agency of Natural Resources acknowledges receipt of the September 9, 2015 letter, that Morrisville Water and Light is withdrawing its application for a water quality certification for the Morrisville Hydroelectric Project and concurrently is reapplying for a certification. The letter was received by the Department on September 9, 2015 via email.


Thank you for your cooperation.


Very truly yours,

*Jeffry B. Crk*

Jeffrey B. Crocker
Streamflow Protection Coordinator

c:        Melissa Grader, USFWS
          Steve Kartalia, FERC
          Trey Martin, VANR
          Jen Duggan, VANR
          Pete LaFlamme, VDEC
          Matt Chapman, VDEC
          Leslie Welts, VDEC
          Eric Davis, VDEC
          Rod Wentworth, VDFW
          Jud Kratzer, VDFW
          Meddie Perry, VHB
          Elijah Emerson, Esq.
          FERC Distribution List

*To preserve, enhance, restore, and conserve Vermont's natural resources, and protect human health, for the benefit of this and future generations.*